JOSEPH N. AKROTIRIANAKIS (SBN 197971)
*jakro@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

CHRISTOPHER C. CAMPBELL (Admitted *pro hac vice*)
*chris.campbell@kslaw.com*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Telephone: (202) 626-5578
Facsimile: (202) 626-3737

Attorneys for Defendants
GETAC TECHNOLOGY
CORPORATION AND GETAC, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANASONIC CORPORATION, | Case No. 8:19-CV-01118-DOC-DFM |
| Plaintiff, | *[Assigned for all purposes to Hon. David O. Carter]* |
| v. | **DEFENDANTS GETAC TECHNOLOGY CORPORATION AND GETAC, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT AND COUNTERCLAIMS** |
| GETAC TECHNOLOGY CORPORATION and GETAC, INC. | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Defendants Getac Technology Corporation ("GTC") and Getac, Inc. ("GUSA") (or collectively, "Getac"), by and through their undersigned counsel, respectfully submit this Answer and Affirmative Defenses to the Third Amended Complaint (Dkt. No. 71), filed by Plaintiff Panasonic Corporation ("Panasonic") on March 24, 2020. The headings below track those used in the Third Amended Complaint and are for convenience only. They do not constitute any part of Getac's Answer to the Third Amended Complaint or any admission by Getac as to the truth of the matters asserted. Getac further states that anything in the Third Amended Complaint that is not expressly admitted is hereby denied.

## NATURE OF THE ACTION

1.     Getac admits that the Third Amended Complaint is styled as an action for patent infringement arising under Title 35 of the United States Code. Getac admits that what purport to be copies of U.S. Patent Nos. D766,232 ("the D'232 patent"), D756,998 ("the D'998 patent"), and D785,634 ("the D'634 patent") (collectively, "the asserted patents") are attached as Exhibits A-C to the Third Amended Complaint. Getac denies any remaining allegations set forth in Paragraph 1.

## THE PARTIES

2.     Getac lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies these allegations.

3.     Getac lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies these allegations.

4.     Getac admits that GTC is a Taiwanese corporation with its principal place of business at 4F, No. 1, R&D 2nd Road, Hsinchu Science Park, Hsinchu County, Taiwan, R.O.C.

5.     Getac admits that GUSA is a corporation organized under the laws of the state of California with its principal place of business at 15495 Sand Canyon Avenue Suite 350, Irvine, California 92618.

6.     To the extent that Paragraph 6 purports to set forth a legal conclusion or

question of law, no response is required. To the extent that a response is required, Getac admits that it operates an interactive website at the URL: https://www.getac.com. Getac admits that what purport to be screen shots of Getac's website are attached as Exhibits D through F to the Third Amended Complaint. Getac denies that the Getac K120 or UX10 infringes the asserted patents and denies all remaining allegations in Paragraph 6.

## **JURISDICTION AND VENUE**

7.    Getac admits that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).

8.    GTC admits that it competes for global business in the rugged computer industry. GTC admits that it designs and delivers rugged computer solutions. GTC admits that what purports to be a screen shot of GTC's website is attached as Exhibit G. Getac denies all remaining allegations of Paragraph 8.

9.    To the extent that Paragraph 9 purports to set forth a legal conclusion or question of law, no response is required. To the extent that a response is required, GTC consents to this Court's jurisdiction for purposes of the above-captioned litigation only. Getac admits that GUSA is a wholly owned subsidiary of GTC. Getac admits that it advertises and sells GTC products in California. GTC admits that it operates the website www.getac.com. GUSA admits that it employs sales representatives and product suppliers in California. Getac denies all remaining allegations in Paragraph 9.

10.    To the extent that Paragraph 10 purports to set forth a legal conclusion or question of law, no response is required. To the extent that a response is required, Getac admits that GUSA is incorporated in California and that this Court has personal jurisdiction over GUSA. Getac admits that it has conducted business in California, including marketing and offering for sale the Getac K120 and has received revenue from sales and marketing of the Getac K120 in California. Getac denies that the Getac K120 infringes the asserted patents. Getac denies any remaining allegations set forth in Paragraph 10.

11.     Getac admits that GTC influences GUSA management decisions. Getac admits that what purports to be a screen shot of Getac's website is attached as Exhibit H. Getac admits that what purports to be a screen shot of Bloomberg's website is attached as Exhibit I. Getac denies any remaining allegations set forth in Paragraph 11.

12.     To the extent that Paragraph 12 purports to set forth a legal conclusion or question of law, no response is required. To the extent that a response is required, Getac admits that GUSA resides in California. Getac does not contest that venue in this district is proper, solely for the purposes of this action. Getac denies that it has committed acts of infringement in this District. Getac denies any remaining allegations set forth in Paragraph 12.

## PATENTS-IN-SUIT

13.     To the extent that the allegations of Paragraph 13 seek to paraphrase or characterize the contents of a written document, the document speaks for itself, and Getac denies the allegations to the extent that they are inconsistent with that document. To the extent that Paragraph 13 purports to set forth a legal conclusion or question of law, no response is required. To the extent that a response is required, Getac denies that the D'232 patent was lawfully issued. Getac denies any remaining allegations set forth in Paragraph 13.

14.     Denied.

15.     Getac lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and therefore denies these allegations.

16.     To the extent that the allegations of Paragraph 16 seek to paraphrase or characterize the contents of a written document, the document speaks for itself, and Getac denies the allegations to the extent that they are inconsistent with that document. To the extent that Paragraph 16 purports to set forth a legal conclusion or question of law, no response is required. To the extent that a response is required, Getac denies that the D'998 patent was lawfully issued. Getac denies any remaining allegations set forth in Paragraph 16.

1    17.    Denied.

2    18.    Getac lacks knowledge or information sufficient to form a belief as to the

3    truth of the allegations in Paragraph 18 and therefore denies these allegations.

4    19.    To the extent that the allegations of Paragraph 19 seek to paraphrase or

5    characterize the contents of a written document, the document speaks for itself, and

6    Getac denies the allegations to the extent that they are inconsistent with that document.

7    To the extent that Paragraph 19 purports to set forth a legal conclusion or question of

8    law, no response is required. To the extent that a response is required, Getac denies that

9    the D'634 patent was lawfully issued. Getac denies any remaining allegations set forth

10   in Paragraph 19.

11   20.    Denied.

12   21.    Getac lacks knowledge or information sufficient to form a belief as to the

13   truth of the allegations in Paragraph 21 and therefore denies these allegations.

14   **<u>BACKGROUND</u>**

15   22.    Getac lacks knowledge or information sufficient to form a belief as to the

16   truth of the allegations in Paragraph 22 and therefore denies these allegations.

17   23.    Getac lacks knowledge or information sufficient to form a belief as to the

18   truth of the allegations in Paragraph 23 and therefore denies these allegations.

19   24.    Getac lacks knowledge or information sufficient to form a belief as to the

20   truth of the allegations in Paragraph 24 and therefore denies these allegations.

21   25.    Getac lacks knowledge or information sufficient to form a belief as to the

22   truth of the allegations in Paragraph 25 and therefore denies these allegations.

23   26.    Getac lacks knowledge or information sufficient to form a belief as to the

24   truth of the allegations in Paragraph 26 and therefore denies these allegations.

25   27.    Getac lacks knowledge or information sufficient to form a belief as to the

26   truth of the allegations in Paragraph 27 and therefore denies these allegations.

27   28.    Getac lacks knowledge or information sufficient to form a belief as to the

28   truth of the allegations in Paragraph 28 and therefore denies these allegations.

29.     Getac lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies these allegations.

30.     Getac admits that what purports to be copies of Windows Blog posts are attached as Exhibits M and N. Getac denies all remaining allegations set forth in Paragraph 30.

31.     Admitted.

32.     Admitted.

33.     Getac lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and therefore denies these allegations.

34.     Getac lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and therefore denies these allegations.

35.     Getac admits that what purports to be a screen shot of Panasonic's website is attached as Exhibit O. Getac lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35 and therefore denies these allegations.

36.     Denied.

**COUNT I: [ALLEGED] INFRINGEMENT OF THE D'232 PATENT**

37.     Getac repeats and incorporates by reference each of its responses to Paragraphs 1-36 above.

38.     To the extent that Paragraph 36 purports to set forth a legal conclusion or a question of law, no response is required. To the extent that a response is required, Getac denies that it has misappropriated the allegedly patented design. Getac denies that the relied-upon SCORE image shows Figure 19 of the issued D'232 patent. Getac denies that drawings taken from the SCORE database are part of the issued patent. Getac denies all remaining allegations set forth in Paragraph 38.

39.     Getac admits that the Getac K120 was first launched on September 19, 2018. Getac lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39 and therefore denies these allegations.

1      40.    Getac admits that the Getac UX10 was first launched on June 26, 2019.
2  Getac lacks knowledge or information sufficient to form a belief as to the truth of the
3  remaining allegations in Paragraph 40 and therefore denies these allegations.

4      41.    To the extent that Paragraph 41 purports to set forth a legal conclusion or
5  a question of law, no response is required. To the extent that a response is required,
6  Getac admits that what purports to be a copy of a post on ruggedpcreview.com is
7  included as Exhibit P to the Third Amended Complaint. Getac denies any remaining
8  allegations set forth in Paragraph 41.

9      42.    Denied.

10     43.    Denied.

11     44.    Denied.

12     45.    Denied.

13     46.    Denied.

14     47.    Denied.

15     48.    Denied.

16     **COUNT II: [ALLEGED] INFRINGEMENT OF THE D'998 PATENT**

17     49.    Getac repeats and incorporates by reference each of its responses to
18  Paragraphs 1-48 above.

19     50.    To the extent that Paragraph 50 purports to set forth a legal conclusion or
20  a question of law, no response is required. To the extent that a response is required,
21  Getac denies that it has misappropriated the allegedly patented design. Getac denies that
22  the relied-upon SCORE images shows Figures 1 and 3 of the issued D'998 patent. Getac
23  denies that drawings taken from the SCORE database are part of the issued patent. Getac
24  denies all remaining allegations set forth in Paragraph 50.

25     51.    Denied.

26     52.    Denied.

27     53.    Denied.

28     54.    Denied.

55.   Denied.

56.   Denied.

## COUNT III: [ALLEGED] INFRINGEMENT OF THE D'634 PATENT

57.   Getac repeats and incorporates by reference each of its responses to Paragraphs 1-56 above.

58.   To the extent that Paragraph 58 purports to set forth a legal conclusion or a question of law, no response is required. To the extent that a response is required, Getac denies that it has misappropriated the allegedly patented design. Getac denies that the relied-upon SCORE image shows Figure 1 of the issued D'634 patent. Getac denies that drawings taken from the SCORE database are part of the issued patent. Getac denies all remaining allegations set forth in Paragraph 58.

59.   Denied.

60.   Denied.

61.   Denied.

62.   Denied.

63.   Denied.

64.   Denied.

## PANASONIC'S PRAYER FOR RELIEF

65.   To the extent that any response to the requested relief in the Third Amended Complaint is required, Getac denies that Panasonic has any valid claim pursuant to 35 U.S.C. §§ 271 *et seq.* Getac further denies that it has violated any of the patent laws of the United States with respect to any of the D'232, D'998, or D'634 patents. Getac further denies that Panasonic is entitled to any of its requested relief, including that specified in paragraphs (a) through (h).

## DEMAND FOR JURY TRIAL

66.   Getac admits that the Third Amended Complaint sets forth a demand for a trial by jury.

## DENIAL OF FACTS NOT ADMITTED

67. Except as expressly admitted above, Getac denies each and every allegation of the Third Amended Complaint.

## AFFIRMATIVE DEFENSES

68. Further answering the Third Amended Complaint and as additional defenses thereto, Getac asserts the following Affirmative Defenses, without assuming the burden of proof when such burden would otherwise be on Panasonic.

## FIRST DEFENSE

### (Invalidity of the D'232 Patent)

69. The claims of the D'232 patent are invalid for failure to satisfy one or more provisions of the Patent Laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112. This defense is based on further facts described below for Getac's counterclaim for declaratory judgment of invalidity of the D'232 Patent. Paragraphs 109-116 are incorporated by reference, here.

## SECOND DEFENSE

### (Invalidity of the D'998 Patent)

70. The claims of the D'998 patent are invalid for failure to satisfy one or more provisions of the Patent Laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112. This defense is based on further facts described below for Getac's counterclaim for declaratory judgment of invalidity of the D'998 Patent. Paragraphs 124-131 are incorporated by reference, here.

## THIRD DEFENSE

### (Invalidity of the D'634 Patent)

71. The claims of the D'634 patent are invalid for failure to satisfy one or more provisions of the Patent Laws, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112. This defense is based on further facts described below for Getac's counterclaim for declaratory judgment of invalidity of the D'634 Patent. Paragraphs 132-139 are incorporated by reference, here.

//

**FOURTH DEFENSE**

**(Unclean Hands)**

72.     Panasonic is not entitled to any relief or recovery by reason of its coming into this Court with unclean hands.

73.     As explained below regarding Getac's counterclaim for monopolization or attempt to monopolize in violation of the Sherman Act based on a *Handgards* claim, (Paragraphs 191-215 are incorporated by reference here), Panasonic asks this Court to enforce patents which Panasonic knows to be invalid. Panasonic admitted to relying on "higher-resolution" drawings obtained from the SCORE database in its original and amended complaint and did so in order to circumvent deficiencies in the issued patent drawings. The same deficiencies in the figures of the asserted patents render the asserted patents invalid. Panasonic's knowing assertion of invalid patents is immediately and necessarily related to Panasonic's infringement suit, because there would be no infringement suit or triable claims based on the asserted patents' invalidity. Panasonic's egregious misconduct justifies dismissal of Panasonic's claims, such that Panasonic takes nothing, under the doctrine of unclean hands.

**FIFTH DEFENSE**

**(Patent Misuse)**

74.     Panasonic's claims for relief against Getac are barred in whole or in part because Panasonic knowingly asserts invalid patents against Getac, as further described in Getac's counterclaims for monopolization and attempt to monopolize based on a *Handgards* claim. Paragraphs 191-215 are incorporated by reference, here.

**SIXTH DEFENSE**

**(35 U.S.C. § 287)**

75.     Any claim for damages for patent infringement by Panasonic is limited by 35 U.S.C. § 287 to those alleged damages occurring only after notice of infringement.

//

//

**SEVENTH DEFENSE**

**(Government Sales – 28 U.S.C. § 1498)**

76.     Panasonic's claims for relief against Getac are barred in whole or in part by 28 U.S.C. § 1498.

**RESERVATION OF ADDITIONAL DEFENSES**

Getac reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law and equity, that may now be or in the future will become available based on discovery or any other factual investigation concerning this action or any related action.

**COUNTERCLAIMS**

77.     Getac repeats and incorporates by reference all allegations in its Answer and in its Affirmative Defenses in Paragraphs 1 through 76 above as if fully set forth here.

78.     As counterclaims against Panasonic, Getac alleges as follows:

**PARTIES**

79.     Counterclaim Plaintiff Getac Technology Corporation is a Taiwanese corporation with its principal place of business believed to be at 4F, No. 1, R&D 2nd Road, Hsinchu Science Park, Hsinchu County, Taiwan, R.O.C.

80.     Counterclaim Plaintiff Getac, Inc. is a California corporation having its principal place of business at 15495 Sand Canyon Avenue Suite 350, Irvine, California 92618.

81.     On information and belief, Counterclaim Defendant, Panasonic Corporation, is a corporation organized under the laws of Japan having its principal place of business at 1006, Oaza Kadoma, Kadoma-shi, Osaka 571-8501, Japan.

**JURISDICTION AND VENUE**

82.     This Court has personal jurisdiction over Panasonic Corporation, which has requested relief from this Court.

83.     Jurisdiction over Getac's counterclaims for declaratory judgment of non-

10

infringement, invalidity, and unenforceability exists pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

84.   Jurisdiction over Getac's Sherman Act counterclaims exists pursuant to 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. §§ 15 and 26.

85.   Jurisdiction over Getac's state law unfair competition counterclaim exists pursuant to 28 U.S.C. §§ 1332 and 1367. Getac's damages for its unfair competition counterclaim exceed $75,000, exclusive of interest and costs.

86.   Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) and 15 U.S.C. §§ 15, 22, and 26 because Panasonic transacted business in this district, and because a substantial part of the events or omissions giving rise to this claim occurred in this district.

87.   As evidenced by Panasonic's Third Amended Complaint and this Answer and Counterclaims, there exists a real and actual controversy between Plaintiff / Counterclaim Defendant Panasonic Corporation and the Defendants / Counterclaim Plaintiffs Getac Technology Corporation and Getac, Inc. concerning the validity, enforceability, and alleged infringement of the D'232, D'998, and D'634 patents.

## COUNTERCLAIM COUNT I

### Declaratory Judgment of Non-Infringement of the D'232 Patent[1]

88.   Getac repeats and incorporates by reference Paragraphs 77-87 of its Counterclaims as if fully set forth here.

89.   Panasonic alleges that Getac has infringed and continues to infringe the D'232 patent. Panasonic claims to be the exclusive owner of all right, title, and interest in the D'232 patent.

90.   Getac denies Panasonic's contention that Getac infringes the D'232 patent and states that Getac has not infringed and does not infringe, either directly,

---

[1] Getac does not waive and maintains its contention that the issued patent figures are indefinite under 35 U.S.C. § 112. Regardless of inconsistencies between solid and dotted lines, Getac does not infringe the asserted patent.

contributorily, or by active inducement, any valid and enforceable claim of the D'232 patent.

91.     For example, an ordinary observer would find that the design of the Getac K120 is distinct from and is not substantially the same as the asserted D'232 design, at least because the K120 uses differently shaped male connectors, an ornamentally different function switch that is distinctly located, and ornamentally distinct hinges.

92.     An ordinary observer would also find that the design of the Getac UX10 is distinct from and is not substantially the same as the asserted D'232 design, at least because the UX10 uses differently shaped male connectors, an ornamentally different function switch that is distinctly located, an ornamentally distinct socket, and ornamentally distinct hinges.

93.     Based on the foregoing, Panasonic's filing of this suit, and Getac's Answer, an actual justiciable case or controversy has arisen and now exists between Getac and Panasonic as to whether Getac has infringed Panasonic's alleged rights under the D'232 patent.

94.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Getac requests a declaration from the Court that Getac has not directly or indirectly infringed any valid claims of the D'232 patent.

## COUNTERCLAIM COUNT II

### Declaratory Judgment of Non-Infringement of the D'998 Patent[2]

95.     Getac repeats and incorporates by reference Paragraphs 77-94 of its Counterclaims as if fully set forth here.

96.     Panasonic alleges that Getac has infringed and continues to infringe the D'998 patent. Panasonic claims to be the exclusive owner of all right, title, and interest in the D'998 patent.

---

[2] Getac does not waive and maintains its contention that the issued patent figures are indefinite under 35 U.S.C. § 112. Regardless of inconsistencies between solid and dotted lines, Getac does not infringe the asserted patent.

97.     Getac denies Panasonic's contention that Getac infringes the D'998 patent and states that Getac has not infringed and does not infringe, either directly, contributorily, or by active inducement, any valid and enforceable claim of the D'998 patent.

98.     For example, an ordinary observer would find that the design of the Getac K120 is distinct from and is not substantially the same as the asserted D'998 design, at least because the K120 uses dual female connectors instead of a single female connector that are distinctly located, places a distinct number of holes in distinct locations along the bottom side of the tablet, and has visually distinct ports on the bottom side of the tablet.

99.     An ordinary observer would also find that the design of the Getac UX10 is distinct from and is not substantially the same as the asserted D'998 design, at least because the UX10 has an ornamentally distinct bottom side, places a distinct number of holes in distinct locations along the bottom side of the tablet, and has visually distinct ports on the bottom side of the tablet.

100.     Based on the foregoing, Panasonic's filing of this suit, and Getac's Answer, an actual justiciable case or controversy has arisen and now exists between Getac and Panasonic as to whether Getac has infringed Panasonic's alleged rights under the D'998 patent.

101.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Getac request a declaration from the Court that Getac has not directly or indirectly infringed any valid claims of the D'998 patent.

## COUNTERCLAIM COUNT III

### Declaratory Judgment of Non-Infringement of the D'634 Patent[3]

102.     Getac repeats and incorporates by reference Paragraphs 77-101 of its

---

[3] Getac does not waive and maintains its contention that the issued patent figures are indefinite under 35 U.S.C. § 112. Regardless of inconsistencies between solid and dotted lines, Getac does not infringe the asserted patent.

1    Counterclaims as if fully set forth here.

2        103.   Panasonic alleges that Getac has infringed and continues to infringe the

3    D'634 patent. Panasonic claims to be the exclusive owner of all right, title, and interest

4    in the D'634 patent.

5        104.   Getac denies Panasonic's contention that Getac infringes the D'634 patent

6    and states that Getac has not infringed and does not infringe, either directly,

7    contributorily, or by active inducement, any valid and enforceable claim of the D'634

8    patent.

9        105.   For example, an ordinary observer would find that the design of the Getac

10   K120 is distinct from and is not substantially the same as the asserted D'634 design, at

11   least because the K120 uses two female connectors instead of a single female connector,

12   utilizes gold alignment pins that are absent in the D'634 design, and uses visually

13   distinct hinges.

14       106.   An ordinary observer would also find that the design of the Getac UX10 is

15   distinct from and is not substantially the same as the asserted D'634 design, at least

16   because the UX10 uses differently shaped male connectors, an ornamentally different

17   function switch that is distinctly located, an ornamentally distinct socket, and

18   ornamentally distinct hinges.

19       107.   Based on the foregoing, Panasonic's filing of this suit, and Getac's

20   Answer, an actual justiciable case or controversy has arisen and now exists between

21   Getac and Panasonic as to whether Getac has infringed Panasonic's alleged rights under

22   the D'634 patent.

23       108.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et*

24   *seq.*, Getac request a declaration from the Court that Getac has not directly or indirectly

25   infringed any valid claims of the D'634 patent.

26

27

28

## **COUNTERCLAIM COUNT IV**

### **Declaratory Judgment of Invalidity of the D'232 Patent[4]**

109.  Getac repeats and incorporates by reference Paragraphs 77-108 of its Counterclaims as if fully set forth here.

110.  Panasonic contends that the D'232 patent is valid.

111.  Getac denies Panasonic's contentions and states that the D'232 patent is invalid for failing to meet one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

112.  For example, the D'232 patent is invalid under 35 U.S.C. §§ 102 and/or 103 because the alleged invention was known or used by others in this country and/or patented or described in a printed publication in this or a foreign country before the alleged invention thereof by the applicant; the alleged invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application in the United States; and/or the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the relevant art. Such prior art patents and/or printed publications include, without limitation, the prior art of record in the prosecution and/or reexamination of the asserted patents, as well as patent and patent application numbers US2012/0066424, US2014/085793 A1, US9,268,369 B2, USD734,762 S1, US6,937,468 B2, and those that will be described in Getac's discovery disclosures and expert reports.

---

[4] Solely for the purpose of answering and preserving observations of invalidity, Getac has presumed that all inconsistencies between dotted and solid lines in the issued patent figures are solid lines. Getac makes such a presumption only so that it may assert its affirmative defenses and counterclaims. Getac does not waive and maintains its contention that the issued patent figures are indefinite under 35 U.S.C. § 112.

113.   As another example, the D'232 patent is indefinite and invalid under 35 U.S.C. § 112, because the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty. For example, the issued figures (*i.e.*, claims) of the D'232 patent are inconsistent in their use of dotted and solid lines and in their claiming of particular design features. In addition, Panasonic misrepresented that figures of the D'232 patent are perspective views, which are in fact axonometric views. Further, Panasonic misrepresented that figures of the D'232 patent were front and back views; when they were in fact axonometric views because the claimed portion is tilted. As a result, the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty.

114.   In addition, the D'232 patent is invalid because it is primarily functional in design because its shape is necessary to perform its designated function of mating with and retaining a tablet computer.

115.   Based on the foregoing, Panasonic's filing of this suit, and Getac's Answer, an actual justiciable case or controversy has arisen and now exists between Getac and Panasonic as to whether the claims of the D'232 patent are invalid.

116.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Getac requests a declaration from the Court that the D'232 patent is invalid.

## COUNTERCLAIM COUNT V

### Declaratory Judgment of Invalidity of the D'994 Patent[5]

117.  Getac repeats and incorporates by reference Paragraphs 77-116 of its Counterclaims as if fully set forth here.

118.  On June 5, 2019, Panasonic filed its original complaint against Defendants, alleging infringement by Defendants of U.S. Design Patent No. D756,944 ("the D'994

---

[5] Solely for the purpose of answering and preserving observations of invalidity, Getac has presumed that all inconsistencies between dotted and solid lines in the issued patent figures are solid lines. Getac makes such a presumption only so that it may assert its affirmative defenses and counterclaims. Getac does not waive and maintains its contention that the issued patent figures are indefinite under 35 U.S.C. § 112.

patent"). On August 28, 2019, Panasonic filed is First Amended Complaint, again alleging infringement by Defendants of the D'994 patent. While Panasonic has dropped the D'994 patent from its Second Amended Complaint, Panasonic contends that the D'994 patent is valid and may choose to enforce the D'994 patent against Getac in the future.

119. The D'994 patent is invalid for failing to meet one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

120. For example, the D'994 patent is invalid under 35 U.S.C. §§ 102 and/or 103 because the alleged invention was known or used by others in this country and/or patented or described in a printed publication in this or a foreign country before the alleged invention thereof by the applicant; the alleged invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application in the United States; and/or the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the relevant art. Such prior art patents and/or printed publications include, without limitation, the prior art of record in the prosecution and/or reexamination of the asserted patents, as well as the Panasonic Toughbook CF-53, the Panasonic Toughbook CF-F8, patent and patent application numbers US2010/046154, USD623644 S1, JP3085404U, and those that will be described in Getac's discovery disclosures and expert reports.

121. As another example, the D'994 patent is indefinite and invalid under 35 U.S.C. § 112, because the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty. For example, the issued figures (i.e., claims) of the D'994 patent are inconsistent in their use of dotted and solid lines and in their claiming of particular design features. In addition, Panasonic misrepresented that

figures of the D'994 patent as perspective views, which are in fact axonometric views. As a result, the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty.

122.  Based on the foregoing, Panasonic's original complaint in this suit, and Getac's Answer, an actual justiciable case or controversy has arisen and now exists between Getac and Panasonic as to whether the claims of the D'994 patent are invalid.

123.  Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., Getac requests a declaration from the Court that the D'994 patent is invalid.

## COUNTERCLAIM COUNT VI

### Declaratory Judgment of Invalidity of the D'998 Patent[6]

124.  Getac repeats and incorporates by reference Paragraphs 77-123 of its Counterclaims as if fully set forth here.

125.  Panasonic contends that the D'998 patent is valid.

126.  Getac denies Panasonic's contentions and states that the D'998 patent is invalid for failing to meet one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

127.  For example, the D'998 patent is invalid under 35 U.S.C. §§ 102 and/or 103 because the alleged invention was known or used by others in this country and/or patented or described in a printed publication in this or a foreign country before the alleged invention thereof by the applicant; the alleged invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application in the United

---

[6] Solely for the purpose of answering and preserving observations of invalidity, Getac has presumed that all inconsistencies between dotted and solid lines in the issued patent figures are solid lines. Getac makes such a presumption only so that it may assert its affirmative defenses and counterclaims. Getac does not waive and maintains its contention that the issued patent figures are indefinite under 35 U.S.C. § 112.

States; and/or the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the relevant art. Such prior art patents and/or printed publications include, without limitation, the prior art of record in the prosecution and/or reexamination of the asserted patents, as well as patent and application numbers USD627,780, USD560,231, USD745,003, USD743,392, and those that will be described in Getac's discovery disclosures and expert reports.

128.   As another example, the D'998 patent is indefinite and invalid under 35 U.S.C. § 112, because the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty. For example, the issued figures (*i.e.*, claims) of the D'998 patent are inconsistent in their use of dotted and solid lines and in their claiming of particular design features. In addition, Panasonic misrepresented that figures of the D'998 patent are perspective views, which are in fact axonometric views. As a result, the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty.

129.   In addition, the D'998 patent is invalid because it is primarily functional in design, as its shape is necessary to perform its designated function of mating with and being retained by the dock on a keyboard.

130.   Based on the foregoing, Panasonic's filing of this suit, and Getac's Answer, an actual justiciable case or controversy has arisen and now exists between Getac and Panasonic as to whether the claims of the D'998 patent are invalid.

131.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Getac requests a declaration from the Court that the D'998 patent is invalid.

//

//

//

//

//

**COUNTERCLAIM COUNT VII**

**Declaratory Judgment of Invalidity of the D'634 Patent[7]**

132.   Getac repeats and incorporates by reference Paragraphs 77-131 of its Counterclaims as if fully set forth here.

133.   Panasonic contends that the D'634 patent is valid.

134.   Getac denies Panasonic's contentions and states that the D'634 patent is invalid for failing to meet one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

135.   For example, the D'634 patent is invalid under 35 U.S.C. §§ 102 and/or 103 because the alleged invention was known or used by others in this country and/or patented or described in a printed publication in this or a foreign country before the alleged invention thereof by the applicant; the alleged invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application in the United States; and/or the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the relevant art. Such prior art patents and/or printed publications include, without limitation, the prior art of record in the prosecution and/or reexamination of the asserted patents, as well as patent and patent application numbers EM 002418467, US9,268,369B2, US9,459,657B2, US8,738,946, US2014/0133080A1, and those that will be described in Getac's discovery disclosures and expert reports.

---

[7] Solely for the purpose of answering and preserving observations of invalidity, Getac has presumed that all inconsistencies between dotted and solid lines in the issued patent figures are solid lines. Getac makes such a presumption only so that it may assert its affirmative defenses and counterclaims. Getac does not waive and maintains its contention that the issued patent figures are indefinite under 35 U.S.C. § 112.

136.   As another example, the D'634 patent is indefinite and invalid under 35 U.S.C. § 112, because the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty. For example, the issued figures (*i.e.*, claims) of the D'634 patent are inconsistent in their use of dotted and solid lines and in their claiming of particular design features. In addition, For example, Panasonic misrepresented that at least Figure 1 of the D'634 patent is a perspective view, which is in fact an axonometric view. As a result, the issued figures do not inform one skilled in the art about the scope of the invention with reasonable certainty.

137.   In addition, the D'634 patent is invalid because it is primarily functional in design as  its shape is necessary to perform its designated function of mating with and retaining a tablet computer.

138.   Based on the foregoing, Panasonic's filing of this suit, and Getac's Answer, an actual justiciable case or controversy has arisen and now exists between Getac and Panasonic as to whether the claims of the D'634 patent are invalid.

139.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Getac requests a declaration from the Court that the D'634 patent is invalid.

## COUNTERCLAIM COUNT VIII

### Declaratory Judgment of Unenforceability of the D'994 Patent

### for Inequitable Conduct

140.   Getac repeats and incorporates by reference Paragraphs 77-139 of its Counterclaims as if fully set forth here.

141.   All claims of the previously asserted D'994 patent are unenforceable due to Panasonic's inequitable conduct before the USPTO during prosecution of the D'994 patent.

142.   The application leading to the D'994 patent, U.S. Application No. 29/523,925 issued without rejection. During prosecution, the examiner cited few references.

143.   U.S. Patent Application No. 2010/0046154 A1 ("the '154 Application")

was filed on August 25, 2009 and published on February 25, 2010. The '154 Application is prior art to the D'994 patent and was neither identified, nor considered, during prosecution of the D'994 patent.

144.   Panasonic is the assignee of the '154 Application and was, therefore, aware of the '154 Application and its contents. Panasonic is also the assignee of the previously asserted D'994 patent.

145.   Hitoshi Nakatani is a named inventor of the '154 Application and was, therefore, aware of the '154 Application and its contents. Mr. Nakatani is also a named inventor on the previously asserted D'994 patent.

146.   The '154 Application discloses an "Information Processing Unit" and, more specifically, "a housing that incorporates an information processor; a handle arranged on one side surface of the housing; and support members that are arranged on the one side surface of the housing to protrude and support the handle." The '154 Application further teaches:

> The handle 4 can be held by the user. The user holds the handle 4 so as to carry the notebook PC by hand. The handle 4 is supported by the support members 41 and 42 at its both ends in the longitudinal direction.

147.   Figure 3 of the '154 Application, below, illustrates the design of the disclosed handle, which is basically the same as the previously asserted design of the D'994 Patent—that is, it creates the same or substantially the same visual impression.

1
2
3
4
5
6
7
8
9
10
11
12



13    148.   The '154 Application is material to the patentability of the D'994 patent.

14   A reasonable patent examiner would have determined that the portable computer handle

15   as illustrated in the '154 Application was material to the patentability of the D'994

16   patent in that it would have affected the issuance of the D'994 patent. However, neither

17   Mr. Nakatani, nor Panasonic, disclosed the '154 Application to the USPTO during

18   prosecution of the D'994 patent.

19    149.   Panasonic sold and was, therefore, aware of a physical product called the

20   Panasonic Toughbook CF-F8, which is a ruggedized notebook. On information and

21   belief, the Panasonic Toughbook CF-F8 was available to the public before the asserted

22   patents were filed and is prior art. On information and belief, the Panasonic Toughbook

23   CF-F8 is the physical embodiment of the '154 Application. On information and belief,

24   Mr. Nakatani, as a named inventor of the '154 Application, was also aware of the

25   Panasonic Toughbook CF-F8.

26    150.   The design of the Panasonic Toughbook CF-F8 handle is the same or

27   basically the same as the previously asserted design of the D'994 Patent—that is, it

28

1   creates the same or substantially the same visual impression.

2   151.   The Panasonic Toughbook CF-F8 is material to the patentability of the

3   D'994 patent. A reasonable patent examiner would have determined that the portable

4   computer handle embodied in the Panasonic Toughbook CF-F8 was material to the

5   patentability of the D'994 patent in that it would have affected the issuance of the D'994

6   patent. However, neither Panasonic, nor Mr. Nakatani, disclosed the Panasonic

7   Toughbook CF-F8 to the USPTO during prosecution of the D'994 patent.

8   152.   Panasonic sold and was, therefore, aware of a physical product called the

9   Panasonic Toughbook CF-53, which is a ruggedized computer. The Panasonic

10   Toughbook CF-53 was available to the public before the asserted patents were filed and

11   is prior art. On information and belief, Mr. Nakatani, as an employee of Panasonic and

12   designer of the similarly designed Panasonic Toughbook CF-F8, was also aware of the

13   Panasonic Toughbook CF-53.

14   153.   The design of the Panasonic Toughbook CF-53 handle is the same as or

15   basically the same as the previously asserted design of the D'994 Patent—that is, it

16   creates the same or substantially the same visual impression.

17   154.   The Panasonic Toughbook CF-53 is material to the patentability of the

18   D'994 patent. A reasonable patent examiner would have determined that the portable

19   computer handle embodied in the Panasonic Toughbook CF-53 was material to the

20   patentability of the D'994 patent in that it would have affected the issuance of the D'994

21   patent. However, neither Panasonic, nor Mr. Nakatani, disclosed the Panasonic

22   Toughbook CF-53 to the United States Patent and Trademark Office ("USPTO") during

23   prosecution of the D'994 patent.

24   155.   The fact that Mr. Nakatani and Panasonic knew of but nonetheless

25   withheld the '154 Application, the Panasonic Toughbook CF-F8, and the Panasonic

26   Toughbook CF-53 during prosecution is evidence of Mr. Nakatani's and Panasonic's

27   specific intent to deceive the USPTO and improperly secure allowance of the patent.

28   156.   The '154 Application, the Panasonic Toughbook CF-F8, and the Panasonic

Toughbook CF-53, individually or in combination with other references cited during the prosecution of the D'994 patent, would invalidate the claims of the D'994 patent under 35 U.S.C. §§ 102 and/or 103. The D'994 patent would not have issued if the patent examiner had considered the '154 Application by itself, the Panasonic Toughbook CF-F8 by itself, the Panasonic Toughbook CF-53 by itself, or any of the above references in combination with other reference cited in the prosecution.

157.   Mr. Nakatani was involved in the prosecution of the application that issued as the D'994 patent and knowingly breached his duty under 37 C.F.R § 1.56 to provide the USPTO with the '154 Application, the Panasonic Toughbook CF-F8, and the Panasonic Toughbook CF-53 during prosecution of the D'994 patent. The D'994 patent is, therefore, unenforceable due to the inventor's inequitable conduct and fraud upon the USPTO during the prosecution and due to the issue of the D'994 patent in violation of 35 U.S.C. §§ 102 and 103.

158.   On information and belief, Mr. Nakatani was employed by Panasonic throughout prosecution of the D'994 patent and was still employed by Panasonic as of the date this lawsuit was filed.

159.   Panasonic was named as an applicant on the D'994 patent's corresponding application and was involved in the prosecution of the application that issued as the D'994 patent. Panasonic knowingly breached its duty under 37 C.F.R. § 1.56 to provide the USPTO with the '154 Application, the Panasonic Toughbook CF-F8, and the Panasonic Toughbook CF-53 during prosecution of the D'994 patent. The D'994 patent is, therefore, unenforceable due to the applicant's inequitable conduct and fraud upon the USPTO during prosecution and due to the issue of the D'994 patent in violation of 35 U.S.C. §§ 102 and 103.

160.   Despite having knowledge of the unenforceability of the D'994 patent due to inequitable conduct, Panasonic previously sought to enforce the D'994 patent in the United States federal court against Getac.

//

**COUNTERCLAIM COUNT XII**

**Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)**

**Monopolization – *Walker Process***

161.   Getac repeats and incorporates by reference Paragraphs 77-160 of its Counterclaims as if fully set forth here.

162.   Panasonic has unlawfully monopolized the market for ruggedized notebooks, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

163.   The relevant product market consists of ruggedized notebooks. Ruggedized notebooks have unique features that make them suitable for operation in rugged environments, such as construction sites and factory floors. Ruggedized notebooks are specifically demanded by users in fields like law enforcement, farming, and transportation, who require the processing power and product features (such as a keyboard) of portable computers. Such features set them apart from other consumer-oriented notebooks, such as those marketed by Apple, Microsoft, and Lenovo—such notebooks do not have the design and construction necessary to withstand impacts, dust, and other environmental elements.

164.   Non-ruggedized products and non-notebooks are therefore not reasonably interchangeable for ruggedized notebooks. In the face of a small, but significant, non-transitory increase in the price of ruggedized notebooks, consumers would not substitute to alternative products.

165.   Panasonic's 2018 Annual Report confirms that it categorizes its "ruggedized PC" business as a separate business unit.[8]

166.   Sales of ruggedized notebooks are not generally limited to any single geographic area. Therefore, the relevant geographic market is the entire world.

167.   On June 5, 2019, Panasonic filed its original complaint against Defendants, alleging infringement by Defendants of the D'994 patent. On August 28, 2019,

---

[8] https://www.panasonic.com/global/corporate/ir/pdf/panasonic_ar2018_e.pdf

Panasonic filed is First Amended Complaint, again alleging infringement by Defendants of the D'994 patent.

168.    As explained above for Getac's counterclaim for declaratory judgment of unenforceability of the D'994 patent for inequitable conduct (paragraphs 140-160, incorporated by reference, here), Panasonic had knowledge that the previously asserted claims of the D'994 patent were fraudulently obtained and unenforceable, due to Panasonic's inequitable conduct before the USPTO during prosecution of the D'994 patent.

169. As explained above, Panasonic intentionally suppressed the '154 Application, the Panasonic Toughbook CF-F8, and Panasonic Toughbook CF-53 to deceive the patent examiner. The absence of such information about prior art was material to the USPTO's determination to allow the D'994 patent to issue and the D'994 patent would not have issued but for Panasonic's deception. Despite its knowledge of its omission, Panasonic asserted a fraudulently obtained patent against Getac in the present action.

170.    Panasonic used the unenforceable D'994 patent to acquire, maintain, and extend its monopoly power in the relevant market of ruggedized notebooks, with the specific intent to exclude Getac from the relevant market and to eliminate competition.

171.    For example, before Panasonic filed the above action, Panasonic and Getac submitted competing bids to a potential customer/third party telecommunications company. On information and belief, Panasonic was aware of Getac's competing bid and intentionally chose to file the present action during the pendency of the bid.

172.    Upon information and belief, Panasonic already possesses at least fifty-five (55) to sixty-five (65) percent share of the relevant global market of ruggedized notebooks. Enforcement of an invalid patent allowed it to entrench its position as the dominant supplier and thereby continue to monopolize the market.

173.    Panasonic's conduct has no procompetitive benefit or justification. The anticompetitive effects of its behavior outweigh any purported procompetitive

1    justifications.

2         174.   Getac has the requisite standing to assert antitrust claims against

3    Panasonic, because Getac is a participant and competitor in the same relevant global

4    market of ruggedized notebooks. Getac's business and ability to compete have been

5    damaged by Panasonic's fraudulent procurement and enforcement of the D'994 patent.

6         175.   Only after Defendants expended significant resources and filed

7    counterclaims against Panasonic in their Answer to Panasonic's First Amended

8    Complaint did Panasonic drop the D'994 patent from this lawsuit.

9         176.   Getac has suffered damages as a direct consequence of Panasonic's actions

10   to exclude it from the market in an amount to be proved at trial and to be automatically

11   trebled.

12        177.   Getac is entitled to recover from Panasonic its attorneys' and other costs

13   of suit it has incurred to defend its business and reputation against Panasonic's

14   fraudulent enforcement, as provided by 15 U.S.C. § 15.

15                          **<u>COUNTERCLAIM COUNT XIII</u>**

16              **Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)**

17                    **Attempt to Monopolize – *Walker Process***

18        178.   Getac repeats and incorporates by reference Paragraphs 77-177 of its

19   Counterclaims as if fully set forth here.

20        179.   Panasonic has attempted to monopolize the market for ruggedized

21   notebooks, in violation of Section 2 of the Sherman Act. 15 U.S.C. § 2.

22        180.   As explained above, Panasonic had knowledge that the claims of the D'994

23   patent which it initially asserted in this lawsuit was fraudulently obtained and

24   unenforceable, as explained in detail above for Getac's counterclaim for declaratory

25   judgment of unenforceability for inequitable conduct (paragraphs 140-160,

26   incorporated by reference here).

27        181.   Panasonic intentionally suppressed the '154 Application, Panasonic

28   Toughbook CF-F8, and Panasonic Toughbook CF-53 to deceive the patent examiner.

The absence of such information about prior art was material to the USPTO's determination to allow the D'994 Patent to issue and the D'994 Patent would not have issued but for Panasonic's deception.

182.   Despite its knowledge of its omissions and misrepresentations, Panasonic asserted a fraudulently obtained patent against Getac in the present action.

183.   Panasonic used the unenforceable D'994 patent to acquire, maintain, and extend its monopoly power in the relevant market of ruggedized notebooks, with the specific intent to exclude Getac from the relevant market and to eliminate competition. Panasonic's specific intent to exclude competition is further evidenced by the timing of Panasonic's suit against Getac—as consumers increasingly demand and purchase Getac's competing products.

184.   For example, before Panasonic filed the above action, Panasonic and Getac submitted competing bids to a potential customer/third party telecommunications company. On information and belief, Panasonic was aware of Getac's competing bid and intentionally chose to file the present action during the pendency of the bid.

185.   Panasonic already possesses at least fifty-five (55) to sixty-five (65) percent share of the relevant global market of ruggedized notebooks. Enforcement of an invalid patent has allowed it to achieve its position as the dominant supplier and, at a minimum, there is a dangerous probability that Panasonic will allow it to further obtain and entrench its monopoly power over the global market for ruggedized notebooks.

186.   Panasonic's conduct has no procompetitive benefit or justification. The anticompetitive effects of its behavior outweigh any purported procompetitive justifications.

187.   Getac has the requisite standing to assert antitrust claims against Panasonic, because Getac is a participant and competitor in the same relevant global market of ruggedized notebooks. Getac's business and ability to compete have been damaged by Panasonic's fraudulent procurement and enforcement of the D'994 patent.

188.   Only after Defendants expended significant resources and filed

DEFENDANTS GETAC TECHNOLOGY CORPORATION AND GETAC, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT AND COUNTERCLAIMS

counterclaims against Panasonic in their Answer to Panasonic's First Amended Complaint did Panasonic drop the D'994 patent from this lawsuit.

189.   Getac has suffered damages as a direct consequence of Panasonic's actions to exclude it from the market in an amount to be proved at trial and to be automatically trebled.

190.   Getac is also entitled to recover from Panasonic its attorneys' fees and other costs of suit it has incurred to defend its business and reputation against Panasonic's fraudulent enforcement, as provided by 15 U.S.C. § 15.

## COUNTERCLAIM COUNT XIV

### Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)

### Monopolization – *Handgards*

191.   Getac repeats and incorporates by reference Paragraphs 77-190 of its Counterclaims as if fully set forth here.

192.   Panasonic has unlawfully monopolized the market for ruggedized notebooks, in violation of Section 2 of the Sherman Act. 15 U.S.C. § 2. In its original complaint (Dkt. 1), Panasonic admittedly used drawings pulled from the Supplemental Complex Repository for Examiners (SCORE) database, which is available through the USPTO's Public PAIR, and misrepresented these drawings as the "patented" designs.

193.   Panasonic then communicated its intention to rely on these SCORE drawings throughout the litigation to Getac's counsel, based on Panasonic's assertion that the SCORE drawings are "higher resolution." Panasonic's reliance on drawings other than those included in the issued patents evidences Panasonic's knowledge that the figures of the asserted patents, as issued (i.e., the claims), are indefinite, invalid, and unenforceable, as further described in Getac's counterclaims for invalidity of the asserted patents. Paragraphs 109-139 are incorporated by reference, here.

194.   Despite its knowledge, Panasonic has asserted and asserts invalid patents against Getac in the present action.

195.   Panasonic has asserted infringement claims over the invalid D'232, D'994,

D'998, and D'634 patents to acquire, maintain, and extend its monopoly power in the relevant market of ruggedized notebooks, with the specific intent to exclude Getac from the relevant market and to eliminate competition.

196.   For example, before Panasonic filed the above action, Panasonic and Getac submitted competing bids to a potential customer/third party telecommunications company. On information and belief, Panasonic was aware of Getac's competing bid and intentionally chose to file the present action during the pendency of the bid.

197.   Upon information and belief, Panasonic already possesses at least fifty-five (55) to sixty-five (65) percent share of the relevant global market of ruggedized notebooks. Enforcement of the invalid patents would allow it to entrench its position as the dominant supplier and thereby continue to monopolize the market.

198.   Panasonic's conduct has no procompetitive benefit or justification. The anticompetitive effects of its behavior outweigh any purported procompetitive justifications.

199.   Getac has the requisite standing to assert antitrust claims against Panasonic, because Getac is a participant and competitor in the same relevant global market of ruggedized notebooks. Getac's business and ability to compete have been damaged by Panasonic's bad faith enforcement of the invalid D'232, D'994, D'998, and D'634 patents.

200.   Getac has suffered damages as a direct consequence of Panasonic's actions to exclude it from the market in an amount to be proved at trial and to be automatically trebled.

201.   Panasonic's knowing assertion of invalid patents has caused and will continue to cause Getac irreparable harm and injury. The balance of the equities and the public interest support enjoining such anticompetitive business practices to support competition in the alleged market.

202.   Only after Defendants expended significant resources and filed counterclaims against Panasonic in their Answer to Panasonic's First Amended

Complaint did Panasonic drop the D'994 patent from this lawsuit. Panasonic has provided Defendants with no guarantee that it will not assert the invalid D'994 patent against Defendants in the future.

203. Getac is also entitled to recover from Panasonic its attorneys' fees and other costs of suit it has incurred to defend its business and reputation against Panasonic's bad faith enforcement, as provided by 15 U.S.C. § 15.

## COUNTERCLAIM COUNT XV

### Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)

### Attempt to Monopolize – *Handgards*

204. Getac repeats and incorporates by reference Paragraphs 77-203 of its Counterclaims as if fully set forth here.

205. Panasonic has attempted to monopolize the market for ruggedized notebooks, in violation of Section 2 of the Sherman Act. 15 U.S.C. § 2. Panasonic asserted the invalid D'994 patent and asserts the invalid D'232, D'998, and D'634 patents in a willful attempt to acquire and/or maintain monopoly power in the relevant global market of ruggedized notebooks. Panasonic brought its First Amended Complaint in bad faith and despite its knowledge that the D'994 patent is indefinite and invalid and Panasonic brings its Third Amended Complaint in bad faith and despite its knowledge that the D'232, D'998, and D'634 patents are indefinite and invalid, as further described in Getac's counterclaims for monopolization based on a *Handgards* claim and for invalidity of the asserted patents. Paragraphs 109-160 and 191-215 are incorporated by reference, here.

206. Despite its knowledge, Panasonic asserted and asserts invalid patents against Getac in the present action.

207. Panasonic has asserted infringement claims over the invalid D'232, D'994, D'998, and D'634 patents to acquire, maintain, and extend its monopoly power in the relevant market of ruggedized notebooks, with the specific intent to exclude Getac from the relevant market and to eliminate competition. Panasonic's specific intent to exclude

competition is further evidenced by the timing of Panasonic's suit against Getac—as consumers increasingly demand and purchase Getac's competing products.

208.   For example, before Panasonic filed the above action, Panasonic and Getac submitted competing bids to a potential customer/third party telecommunications company. On information and belief, Panasonic was aware of Getac's competing bid and intentionally chose to file the present action during the pendency of the bid.

209.   Panasonic already possesses at least fifty-five (55) to sixty-five (65) percent share of the relevant global market of ruggedized notebooks. Enforcement of the invalid patents has allowed it to achieve its position as the dominant supplier and, at a minimum, there is a dangerous probability that Panasonic will allow it to further obtain and entrench its monopoly power over the global market for ruggedized notebooks.

210.   Panasonic's conduct has no procompetitive benefit or justification. The anticompetitive effects of its behavior outweigh any purported procompetitive justifications.

211.   Getac has the requisite standing to assert antitrust claims against Panasonic, because Getac is a participant and competitor in the same relevant global market of ruggedized notebooks. Getac's business and ability to compete have been damaged by Panasonic's bad faith enforcement of the invalid D'232, D'994, D'998, and D'634 patents.

212.   Getac has suffered damages as a direct consequence of Panasonic's actions to exclude it from the market in an amount to be proved at trial and to be automatically trebled.

213.   Panasonic's knowing assertion of invalid patents has caused and will continue to cause Getac irreparable harm and injury. The balance of the equities and the public interest support enjoining such anticompetitive business practices to support competition in the alleged market.

214.   Only after Defendants expended significant resources and filed

counterclaims against Panasonic in their Answer to Panasonic's First Amended Complaint did Panasonic drop the D'994 patent from this lawsuit.

215.   Getac is also entitled to recover from Panasonic its attorneys' fees and other costs of suit it has incurred to defend its business and reputation against Panasonic's fraudulent enforcement, as provided by 15 U.S.C. § 15.

## COUNTERCLAIM COUNT XVI

### Cal. Bus. & Prof. Code § 17200 - Unfair Competition

216.   Getac repeats and incorporates by reference Paragraphs 77-215 of its Counterclaims as if fully set forth here.

217.   Panasonic has engaged in unfair competition in violation of Section 17200 *et seq.* of the California Business & Professions Code through the unlawful, unfair, and fraudulent business acts and practices alleged in this Answer, including but not limited to violations of the Sherman Act, unclean hands, and knowingly asserting invalid patents. Paragraphs 161-215 are incorporated by reference, here.

218.   Panasonic's unfair competition has substantially damaged Getac's business, caused and will continue to cause Getac irreparable harm and injury, substantially damaged consumers' interests, and unjustly enriched Panasonic, and will continue such damage and unjust enrichment unless enjoined by the Court. The balance of the equities and the public interest support enjoining such unfair and unlawful business practices.

219.   Panasonic engaged in such unfair competition with knowledge of its illegality and with specific intent to extend its market dominance, harm competition, and damage Getac's business.

## PRAYER FOR RELIEF

WHEREFORE, Getac respectfully prays for judgment and seeks relief against Panasonic as follows:

   a.   Enter judgment denying all relief requested by Panasonic in its Third Amended Complaint;

b.   Dismiss Panasonic's Third Amended Complaint with prejudice;

c.   Declare the asserted patents to be not infringed;

d.   Declare the asserted patents, as well as the previously asserted D'994 patent, to be invalid;

e.   Judgment that Panasonic has come to this Court with unclean hands and should be denied any relief;

f.   Judgment that Panasonic has monopolized or has attempted to monopolize the global market for ruggedized notebooks in violation of the Sherman Act;

g.   An award to Getac of all damages sustained as a result of Panasonic's violations of the federal antitrust laws, including an award of treble damages under Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a);

h.   Pre- and post-judgment interest under Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a);

i.   Permanent injunctive relief prohibiting Panasonic from engaging in its anticompetitive conduct under Federal Rule of Civil Procedure 65 and Section 16 of the Clayton Act, 15 U.S.C. § 26, including without limitation by enjoining Panasonic from asserting or enforcing its fraudulently obtained patents and from engaging in unfair competition;

j.   Judgment that Panasonic has violated California unfair competition laws and, pursuant to California Business and Professions Code Section 17206, should be assessed a civil penalty in the amount of $2,500 for each violation;

k.   Declare the previously asserted D'994 patent to be unenforceable due to inequitable conduct and fraud upon the USPTO;

l.   Declare this case exceptional and award Getac its reasonable costs and attorneys' fees pursuant to 35 U.S.C. § 285;

m.   An award to Getac of its fees and costs incurred in defending against

35

1            Panasonic's claims and bringing these counterclaims, and prejudgment

2            and postjudgment as allowed by law;

3      n.     Award such other and further relief as the Court deems just and proper.

4                     **<u>DEMAND FOR JURY TRIAL</u>**

5        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Local

6 Rules of this Court, Getac demands a trial by jury on all issues triable to a jury.

8 Dated: April 7, 2020            KING & SPALDING LLP

10                   By: *<u>/s/ Christopher C. Campbell</u>*
CHRISTOPHER C. CAMPBELL
JOSEPH N. AKROTIRIANAKIS

Attorneys for Defendants GETAC
TECHNOLOGY CORPORATION AND
GETAC, INC.

DEFENDANTS GETAC TECHNOLOGY CORPORATION AND GETAC, INC.'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT AND COUNTERCLAIMS