# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| PANASONIC CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>GETAC TECHNOLOGY CORPORATION et al.,<br><br>    Defendants. | Case No.:  8:19-cv-01118-DOC (DFMx)<br><br>**ORDER RE CLAIMS CONSTRUCTION** |

## I. INTRODUCTION

In this action, Plaintiff Panasonic ("Panasonic" or "Plaintiff") accuses Defendants Getac Technology and Getac Inc. ("Defendants") of infringing three design patents. Specifically, Plaintiff accuses Defendants of infringing U.S. Design Patent Nos. D766,232 ("the D'232 Patent"), D756,998 ("the D'998 Patent"), and D785,634 ("the D'634 Patent") (collectively, "the asserted patents"). Defendants have denied infringement and asserted various defenses, including that the asserted patents are indefinite. Defendants counterclaim for declaratory judgment as to the invalidity of the asserted patents as well as the invalidity of a fourth patent—U.S. Design Patent No. D756,994 ("the D'994 Patent") (collectively with the asserted patents, "the patents").

## II. LEGAL STANDARDS FOR CLAIM CONSTRUCTION

### A. Claim Construction

Analysis of a design patent "first involves a claim construction." *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1102 (2018). "A design patent's claim is [ ] often better represented by illustrations than a written claim construction." *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316 (Fed. Cir. 2016) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc)). "Even so, a district court may use claim construction to help guide the fact finder through issues that bear on claim scope." *Id*. If, however, the Court "does not regard verbal elaboration as necessary or helpful," it is "not obligated to issue a detailed verbal description of the design." *Egyptian Goddess*, 543 F.3d at 679.

### B. Claim Indefiniteness

Defendants contend that the patents are indefinite, and therefore violate the basic requirement that a patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor … regards as the invention." 35 U.S.C. § 112(b). The definiteness requirement represents "a delicate balance." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014). What the statute requires "is that

a patent's claims, viewed in light of the specification and prosecution history, inform *those skilled in the art* about the scope of the invention with reasonable certainty." *Id.* at 910 (emphasis added). As with any other invalidity defense, a defendant asserting indefiniteness must prove that defense by clear and convincing evidence. *Microsoft Corp. v. i4i Limited Partnership,* 564 U.S. 91, 95 (2011); *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

### III. Discussion

The parties disagree as to whether claim construction is necessary in this case. Panasonic believes a claim construction process is unnecessary. *See* Joint Claim Construction and Prehearing Statement (Dkt. 66) ("Joint Statement") at 2. Defendants argue that claim construction is necessary because the patents are indefinite or primarily functional. *Id*.

In its Claim Construction Brief ("Opening Brief") (Dkt. 76), Plaintiff's proposed constructions avoid detailed verbal descriptions and rely primarily on illustrations. Opening Brief at 10–11. However, Plaintiff details a "degradation issue" where the USPTO included lower resolution drawings in the issued patents than what was submitted to the office. *Id*. at 12. Thus, Panasonic asks this Court to "rely upon [ ] SCORE drawings as the best representation of the scope of the" patents. *Id*. at 12. In response, Defendants argue that construction is necessary because the figures do not define the claimed design with reasonable certainty. *See* Responsive Claim Construction Brief ("Responsive Brief") (Dkt. 76) at 3–5. Defendants contend that the clarity of the figures and alleged misleading descriptions render the patents indefinite. *Id*. Furthermore, Defendants argue that this Court cannot substitute file history drawings for patent figures and cannot correct any errors in the patent that are not evidence on the fact of the patent. *Id*. 5–9. Finally, Defendants present arguments regarding whether a verbal description is necessary to distinguish the patents' functional features from ornamental features.

Although detailed verbal claim constructions are disfavored in design patents, the Federal Circuit has explained that the trial court can provide guidance to the jury regarding the scope of the claimed design:

> Apart from attempting to provide a verbal description of the design, a trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim. Those include such matters as describing the role of particular conventions in design patent drafting, such as the role of broken lines, *see* 37 C.F.R. § 1.152 . . . .

*Egyptian Goddess*, 543 F.3d at 680. Therefore, the Court will consider each of the design patents to determine whether additional construction of the scope of the patent is necessary and useful to the jury. As explained below, a simple construction construing the claims as the ornamental design shown in the patents' figures and file history will suffice. Furthermore, the Court will not entertain arguments regarding whether the patents at issue are primarily functional at this stage. Instead, Defendants may present their functionality arguments at the summary judgment stage. Finally, the Court will address (1) the degradation issue present in the patent figures; (2) alleged discrepancies between the written description and the figures; and (3) alleged inconsistencies between SCORE drawings for each patent at issue.

### 1. Image Degradation

Plaintiff describes that the applications it submitted for the patents "were filed with high-resolution images showing the design figures." Opening Brief at 3; *id*. at Declaration of Jieun Lee (Dkt. 72-1) ("Lee Decl.") Exhs. A–D. It was these high resolution images that were used by the USPTO when it issued the patents. Opening Brief at 3–4. However, the figures actually published in the patents are lower resolution pdfs "per the usual USPTO printing process." *Id*. at 4. The following images show the difference between the images submitted by Plaintiffs and those produced in the patents at issue.



The images depict a lower resolution photo (shown at bottom) than what was submitted by the Plaintiff (shown at top). The USPTO has set up a system where high-resolution drawings can be uploaded to a database called the Supplemental Complex Repository for Examiners ("SCORE"). *Id*. at 5. Plaintiff uploaded high-resolution photos to the SCORE database. *Id*.; *see*

1 *also* Lee Decl. at Exhs. A–D. Based on this information, Plaintiff argues that "it is entirely appropriate to rely upon these SCORE drawings as the best representation of the scope of the Patents-in-Suit." Opening Brief at 12.

Defendants argue that the patent figures—those actually published in the patents at issue—do not define the claimed design with reasonable certainty and are therefore indefinite. Responsive Brief at 3. They argue that "[f]rom the figures in Panasonic's issued patents, it is difficult (if not impossible) to distinguish what is claimed and what is environment." *Id*. Thus, an ordinary observer cannot determine the scope of the inventions with reasonable certainty. *Id*. at 4.

Defendants further argue that the SCORE drawings cannot help the Plaintiff because a design patent specification must "notify the public of related drawings in the file history" to adequately inform the public of any differences in file history or SCORE drawings. *Id*. at 5. Defendants argue that an ordinary observer of this patent would not have understood that the SCORE drawings (and not the figures on the issued patents) defined the scope of the alleged inventions because there was no mention of other drawings in the specification. *Id*. at 6.

Lastly, Defendants argue that Panasonic chose not to correct its patents before filing suit. The Patent Act provides for a correction of a "mistake in a patent, incurred through the fault of the Patent and Trademark Office" through a certificate of correction. 35 U.S.C. § 254. Instead of taking advantage of this process, Plaintiff chose to sue Defendants on patents they knew were defective, and Defendants contend that this Court cannot correct the error because the error is major and not evidence on the fact of the patent. Responsive Brief at 7.

Panasonic replies, arguing that it is not asking the Court to correct this error or replace the figures with the SCORE drawings. Instead, it is asking the Court to "rely upon [the SCORE images] as reflecting the scope of" the patents. Reply Brief at 6. Furthermore, Plaintiff does not concede that the lower quality images included in the patent would preclude one skilled in the art from understanding the scope of the invention. *Id*. at 7. Instead, Plaintiff simply acknowledges that the higher quality images do not suffer from the same poor line qualities that Defendants complain of. *Id*. Finally, Plaintiff argues that the "public is presumed to be aware of

the prosecution history," and thus there is adequate notice to the public to look at SCORE drawings. *Id.* at 10.

The image degradation issue does not render the patents indefinite, and the Court finds that it is appropriate to reference the SCORE images to determine the scope of the patents at issue. First, there is no dispute that the SCORE drawings for each of the patents are part of the patents' prosecution histories. Opening Brief at 11; Joint Statement at 4 (Getac describing the SCORE database drawings as part of file history). The Patent Act requires "a patent's claims, viewed in light of the specification and prosecution history" to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910. The Federal Circuit has clarified that a design patent is invalid for indefiniteness under § 112 "if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure." *In re Maatita*, 900 F.3d 1369, 1377 (Fed. Cir. 2018). Here, the claims viewed in the light of the prosecution history would inform one skilled in the art—viewing the design as would an ordinary observer—of the scope of the design with reasonable certainty.[1]

Further, the Federal Circuit instructs the Court to provide constructions, if useful, in view of "the claims themselves, the reminder of the specification, [and] the prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). Courts in this district have looked at the prosecution histories of design patents to determine the scope of the patents at issue. *See, e.g., Apple, Inc. v. Samsung Elecs*. Co., No. 11-CV-01846-LHK, 2012 WL 3071477, at *6 (N.D. Cal. July 27, 2012) ("Because the prosecution history supports the broken line disclaimer, the public notice function regarding the meaning of the broken lines in the D'677 is served."). Thus, in accordance with *Egyptian Goddess*, the Court finds it useful to include the following constructions for the patents at issue:

- D'232 Patent: The ornamental design for a portable computer, as shown and described in Figures 1-20 of the patent and Figures 1-20 located in the D'232

---

[1] The Court also finds that one skilled in the art would know to look to the file history to confirm their understanding of the claimed design if such clarity was necessary after looking at the patent itself.

1  Patent file history and available through the Supplemental Complex Repository
2  for Examiners ("SCORE") database. The broken lines shown in the figures
3  represent environment only and form no part of the claimed design.
4  - D'998 Patent: The ornamental design for a portable computer, as shown and
5    described in Figures 1-9 of the patent and Figures 1-9 located in the D'998
6    Patent file history and available through the Supplemental Complex Repository
7    for Examiners ("SCORE") database. The broken line showing of a portable
8    computer is included for the purpose of illustrating environment and forms no
9    part of the claimed design.
10 - D'634 Patent: The ornamental design for a portable computer connection
11   terminal with keyboard, as shown and described in Figures 1-10 of the patent and
12   Figures 1-10 located in the D'634 Patent file history and available through the
13   Supplemental Complex Repository for Examiners ("SCORE") database. The
14   broken lines in the drawings depict portions of the portable computer connection
15   terminal with keyboard that form no part of the claimed design.
16 - D'994 Patent: The ornamental design for a portable computer, as shown and
17   described in Figures 1-10 of the patent and Figures 1-10 located in the D'994
18   Patent file history and available through the Supplemental Complex Repository
19   for Examiners ("SCORE") database. The broken line showing of a portable
20   computer is included for the purpose of illustrating environment only and forms
21   no part of the claimed design. Additionally, the dot-dash broken lines shown
22   adjacent the rear edge of the computer in Figures 1, 7, and 10 define the limits of
23   the claimed design.

24 These constructions provide clarity to the fact-finder and allows them to reference the
25 patent history to accurately understand the scope of the patents at issue without improperly
26 redrafting the claims.

### 2. Discrepancies

Getac further argues that the patents are indefinite for "misleading descriptions." First, Getac discusses how certain drawings are described as "perspective" when they are in fact "isometric." Responsive Brief at 5. Second, Getac argues that three of the four patents at issue are directed to a "portable computer," the solid lines in the SCORE drawings claim only a small portion of what could be a portable computer. *Id*. at 4. Finally, Getac argues that the D'634 patent describes a "portable computer connection terminal with keyboard," but the SCORE drawings are limited to the inner portion of a docking cradle socket. *Id*. at 5. For these reasons, Getac argues that "an ordinary observer would readily be deceived into concluding that the inventors intended to claim the design of the entire device shown in the figures." *Id*.

The Court finds that any alleged misleading descriptions are minor and would not prevent someone with ordinary skill in the art from understanding the scope of the design with reasonable certainty. First, Getac's arguments regarding alleged inconsistencies between the patent title and the visual disclosures are minor at best, and "the purpose of the title is not to demarcate the precise boundaries of the claimed invention but rather to provide a useful reference for future classification purposes." *Pitney Bowes, Inc. v. Hewlett-Packard Co*., 182 F.3d 1298, 1312 (Fed. Cir. 1999). Next, the alleged inconsistency in the labeling of some figures as "perspective" views is not of such magnitude that one skilled in the art would be unable to determine the scope of the alleged invention. *See* Declaration of Peter W. Bressler (Dkt. 78-1) ¶ 37 ("Indeed, in my opinion, an ordinary observer would likely fail to notice that the figures are not 'perspective' or appreciate the impact of the drawings being trimetric or dimetric."). Thus, these alleged inconsistencies do not render the patents indefinite and do not necessitate any further verbal construction.

### 3. Alleged Inconsistencies

At oral argument, Defendants asked the Court to—as a matter of claim construction—clarify several alleged inconsistencies in the figures of the patents at issue.[2] The parties stipulated to clarifying several of the inconsistencies at oral argument, but some inconsistencies were left for this Court to clarify. The Court outlines the alleged inconsistencies below:

D'232

- The Court finds that a POSITA, looking at the figures in their entirety, would find that a "center switch" is claimed as shown in SCORE Figure 3 and conceded by Plaintiff during oral argument. *See* Tr. at 29:18–23.
- The Court finds that a POSITA, looking at the figures in their entirety, would find that the "tablet connector" is claimed as shown in SCORE Figure 9 and conceded by Plaintiff during oral argument. *See* Tr. at 47:10–17.
- The Court finds that a POSITA, looking at the figures in their entirety, would find that there is no seam shown and therefore no seam is claimed as Defendants argue is shown SCORE Figure 16.
- The Court finds that a POSITA, looking at the figures in their entirety, would find that there is no inconsistency regarding a "raised button" between SCORE Figures 6/14 and 3/13.

---

[2] Defendants also pointed the Court to alleged "multiple versions" of SCORE drawings in the SCORE database, but the parties themselves stipulated to the correct versions at the hearing. Defendants also asked this Court to identify functional features in the patents at issue. Given the constructions already provided in this Order, the Court finds that the briefing and oral argument regarding functionality are more appropriately addressed at summary judgment. *See Skechers U.S.A. v. Eliya, Inc.*, 2017 U.S. Dist. Lexis 180812, at *7 (C.D. Cal. Mar. 14, 2017) ("Claim construction briefs are generally not the proper avenue to pursue invalidity issues, as the purpose of claim construction is to guide the fact-finder in determining 'issues that **bear on the scope of the claim**.'") (emphasis in original) (citing *Egyptian Goddess*, 543 F.3d at 680).

- The Court finds that a POSITA, looking at the figures in their entirety, would find that a "chamfer" is claimed as shown in SCORE Figure 4 and conceded by Plaintiff during oral argument. *See* Tr. at 51:22–25.

D'634

- The Court finds that Defendant has not shown any material inconsistency in the SCORE figures with the D'634 patent.

D'998

- The Court finds that Defendant has not shown any material inconsistency in the SCORE figures with the D'998 patent.

## IV. Disposition

For the reasons stated above, the Court construes the claims as follows:

- D'232 Patent: The ornamental design for a portable computer, as shown and described in Figures 1-20 of the patent and Figures 1-20 located in the D'232 Patent file history and available through the Supplemental Complex Repository for Examiners ("SCORE") database. The broken lines shown in the figures represent environment only and form no part of the claimed design.
- D'998 Patent: The ornamental design for a portable computer, as shown and described in Figures 1-9 of the patent and Figures 1-9 located in the D'998 Patent file history and available through the Supplemental Complex Repository for Examiners ("SCORE") database. The broken line showing of a portable computer is included for the purpose of illustrating environment and forms no part of the claimed design.
- D'634 Patent: The ornamental design for a portable computer connection terminal with keyboard, as shown and described in Figures 1-10 of the patent and Figures 1-10 located in the D'634 Patent file history and available through the Supplemental Complex Repository for Examiners ("SCORE") database. The

broken lines in the drawings depict portions of the portable computer connection terminal with keyboard that form no part of the claimed design.

- D'994 Patent: The ornamental design for a portable computer, as shown and described in Figures 1-10 of the patent and Figures 1-10 located in the D'994 Patent file history and available through the Supplemental Complex Repository for Examiners ("SCORE") database. The broken line showing of a portable computer is included for the purpose of illustrating environment only and forms no part of the claimed design. Additionally, the dot-dash broken lines shown adjacent the rear edge of the computer in Figures 1, 7, and 10 define the limits of the claimed design

The Court further finds that, at this stage, Defendants' have not shown that any of the patents are invalid for indefiniteness by clear and convincing evidence. Finally, the Court reserves all arguments regarding functionality for summary judgment and finds that no further verbal description of the functional elements of the patents is necessary.

DATED: August 3, 2020

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE