UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PANASONIC CORP., <br><br> Plaintiff, <br><br> vs. <br><br> GETAC TECHNOLOGY CORP. and GETAC, INC., <br><br> Defendants. | Case No. SA CV 19-01118-DOC (DFM) <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [184] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [185] |

Before the Court are Plaintiff Panasonic Corp.'s ("Plaintiff" or "Panasonic") Motion for Partial Summary Judgment ("Plaintiff MSJ") (Dkt. 184)[1] and Defendants Getac Technology Corp. and Getac Inc.'s ("Defendant" or "Getac") Motion for Summary Judgment ("Defendant MSJ") (Dkt. 185). The Court heard oral arguments on January 13, 2022. For the reasons described below, the Court GRANTS Plaintiff's Motion and DENIES Defendant's Motion.

# I. BACKGROUND

## A. Facts[2]

This case arises out of four design patents for rugged computers owned by Panasonic and challenged by Getac. *See generally* Third Amended Complaint ("TAC") (Dkt. 71).

### i. The patents at issue

Patent No. D756,994 ("the D'994 patent") claims a design for a curved laptop handle with decorations and two links to the laptop body at specific angles. Plaintiff MSJ at 5.



*Figure A: D'994 patent Fig. 1 (SCORE image)*

Patent No. D756,998 ("the D'998 patent") claims a design for a tablet with recessed 45-degree corners on its bottom edge. *Id.* at 4.



*Figure B: D'998 patent Fig. 3 (SCORE image)*

---

[1] The Court granted the parties' motions to file portions of their briefing ex parte and under seal. All docket references are to the redacted public filings. The sealed filings use the same pagination as the public filings.

[2] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

1   Patent No. D766,232 ("the D'232 patent") claims
2   the design for a canoe-shaped portable computer docking
3   cradle with 45-degree raised ends and two rectangular legs
4   that pivot. *Id.* at 4. The D'232 patent lists So Suzuki,
5   Katsuhiro Kitade, and Takashi Tsukahara as its inventors.
6   Defendant's Statement of Uncontroverted Material Facts
7   ("Defendant SUF") (Dkt. 184-38) ¶ 19.



*Figure C: D'232 patent fig. 19*

8   Patent No. D785,634 ("the D'634 patent") claims the
9   design for the interior of a canoe-shaped portable computer
10  docking cradle, including internal surfaces and components.
11  Plaintiff MSJ at 4–5.



*Figure D: D'634 patent fig. 1 (SCORE image)*

### ii. Products at issue

14  Panasonic sells a tablet, the CF-20, which practices design elements claimed by the
15  D'634, D'232, and D'998 patents. Defendant SUF ¶¶ 70–71; Plaintiff MSJ at 6. Panasonic also
16  sells the Toughpad FZ-A2 tablet, which practices the design claimed by the D'998 patent.
17  Plaintiff MSJ at 6. Finally, Panasonic sells a rugged computer, the Toughbook CF-33, which
18  practices the design claimed by the D'634 patent. *Id.*
19  Getac and Panasonic are competitors in the rugged laptop and tablet market. *Id.* Getac
20  sells the K120 rugged computer / tablet with accessory keyboard, which Panasonic alleges
21  copies design elements of the CF-33. *Id.* at 8. Getac also sells the smaller UX10 rugged
22  computer / tablet with accessory keyboard, which Panasonic similarly challenges. *Id.* at 9.

### iii. D'994 covenant

25  Panasonic's initial Complaint asserted all four of the above design patents against Getac.
26  *See generally* Complaint (Dkt. 1). Panasonic's Second Amended Complaint dropped the claims
27  relating to the D'994 patent. Second Amended Complaint (Dkt. 54). After filing its Second
28  Amended Complaint, Panasonic granted Getac an "irrevocabl[e] and unconditional[]" covenant

not to sue on the D'994 patent. Plaintiff's Statement of Uncontroverted Material Facts ("Plaintiff SUF") (Dkt. 183-2) ¶ 18; Plaintiff MSJ Ex. N ("Covenant") (Dkt. 184-16). Panasonic promised in the covenant not to "mak[e] any claim(s) or demand(s) against Getac, their suppliers, their distributors, their customers, or any other person or entity under the direct control of Getac for any past, current or future infringement of the D'994 patent." Covenant ¶ 6.

### B. Procedural History

On June 5, 2019, Panasonic filed a Complaint in this Court. Panasonic filed its First Amended Complaint on August 28, 2019 (Dkt. 41), and its Second Amended Complaint on October 23, 2019. Panasonic filed its Third Amended Complaint on March 24, 2020. The *Markman* hearing took place on July 27, 2020 and the Court issued a Claim Construction Order on August 3, 2020 (Dkt. 115).

On August 6, 2021, Panasonic filed a motion for partial summary judgment and Getac filed a motion for summary judgment. Getac opposed ("Defendant Opp'n") (Dkt. 197) and Panasonic opposed ("Plaintiff Opp'n") (Dkt. 200) on August 20, 2021. Panasonic filed its reply ("Plaintiff Reply) (Dkt. 211) and Getac filed its reply ("Defendant Reply) (Dkts. 210, 212-1) on August 27, 2021. The Court heard oral arguments on January 13, 2022.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the

absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III. PANASONIC'S MOTION FOR SUMMARY JUDGMENT

#### A. Mootness of Getac's Fifth and Eighth Counterclaims

Getac's fifth counterclaim seeks declaratory judgment that the D'994 patent is invalid; Getac's eighth counterclaim seeks declaratory judgment that the D'994 patent is unenforceable for inequitable conduct. *See* Answer (Dkt. 73). Panasonic argues that these counterclaims are moot because Panasonic withdrew the D'994 patent from the Second Amended Complaint and issued Getac a covenant not to sue in January 2020. Plaintiff MSJ at 12. Getac responds that the counterclaims are not moot because they are components of Getac's attorneys' fees and antitrust counterclaims. Defendant Opp'n at 3–4.

The Federal Circuit has repeatedly held that a covenant not to sue can eradicate jurisdiction over a declaratory judgment action. *See Microchip Technology Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999). However, "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). *Revolution Eyewear* held that a declaratory judgment action was not moot when a covenant not to sue did not encompass future infringement. *Id.* at 1300.

Here, Panasonic's covenant states in relevant part:

> Panasonic, on behalf of itself and its successors-in-interest, hereby irrevocably and unconditionally covenants to refrain from making any claim(s) or demand(s) against Getac, their suppliers, their distributors, their customers, and any other person or entity under the direct control of Getac for any past, current or future infringement of the D'994 patent arising directly from their manufacture, having manufactured, importation, distribution, use, sale and/or offering for sale of any previously and/or currently existing Getac computer products, including the Getac K120 described in Panasonic's Second Amended Complaint, and any future Getac computer products.

Covenant ¶ 6. This covenant is broad in terms of covered parties and covered claims and extends both to future products and to future sales of existing products. As such, it effectively removes the potential for future litigation between the parties involving the D'994 patent and moots these two counterclaims. *See Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1363 (Fed. Cir. 2008) (holding no jurisdiction when covenant covered defendant and its "affiliates, suppliers and downstream customers"); *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010) (holding jurisdiction was extinguished even when covenant did not include promise not to sue affiliates); *see also Tech. Licensing Corp. v. Technicolor USA, Inc.*, 800 F. Supp. 2d 1116, 1121 (E.D. Cal. 2011); *Crossbow Tech., Inc. v. YHTech.*, 531 F. Supp. 2d 1117, 1122 (N.D. Cal. 2007); *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, No. 2:12-cv-10763-MMM, 2015 WL 12712288, at *9 (C.D. Cal. July 10, 2015); *U.S. Rubber Recycling, Inc. v. Encore Int'l, Inc.*, No. 2:09-cv-09516-SJO, 2011 WL 311014, at *5 (C.D. Cal. Jan. 7, 2011);

*USANA Health Scis., Inc. v. SmartShake US, Inc.*, No. 2:17-cv-00139-DN, 2018 WL 2709215, at *7 (D. Utah June 5, 2018).

### 1. Attorneys' Fees Claim

Section 285 provides that in patent litigation, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Federal Circuit has explained repeatedly that when a covenant not to sue extinguishes jurisdiction over infringement-related claims, "the district court correctly retain[s] jurisdiction over . . . claim[s] for attorney fees" under § 285. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032–33 & n.1 (Fed. Cir. 2006). At argument, Getac contended that *Monsanto*, a Federal Circuit case, instructs that the declaratory judgment claim based on inequitable conduct remains live after a covenant not to sue. But in *Monsanto* the patent-holder dismissed all claims relating to the patents covered by a covenant; the court analyzed only whether a subsequent finding of inequitable conduct could render one of those patents unenforceable. *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1233, 1243 (Fed. Cir. 2008). The *Monsanto* court noted that although a covenant not to sue divests the court of jurisdiction over declaratory judgment claims, "a district court's jurisdiction under § 285 to determine whether there was inequitable conduct in the prosecution of patents that are otherwise no longer in suit confers on that court the jurisdiction to hold such patents unenforceable for inequitable conduct." *Id.* at 1243. As such, Getac may still bring evidence of inequitable conduct relating to the D'994 patent in a future motion for attorneys' fees, and if it obtains a finding of inequitable conduct at that point, the D'994 patent could be held unenforceable. However, the attorneys' fees claim does not provide an independent jurisdictional hook for Getac's fifth and eighth declaratory judgment counterclaims.

### 2. Antitrust Claims

Getac also argues that the counterclaims are not moot since the D'994 patent's invalidity (counterclaim five) is inextricably combined with its *Handgards* antitrust claim, which requires

proving that Panasonic undertook this litigation knowing that the patent was invalid, and that inequitable conduct (counterclaim eight) is necessary to its *Walker Process* antitrust claim, which requires proving that Panasonic intentionally deceived the PTO by withholding material prior art. Defendant Opp'n at 4–5. Getac specifically argues that if the Court finds these counterclaims to be moot, Getac will face significant prejudice by being "barred from also presenting an invalidity defense." *Id.* at 6.

As in *Encore*, a similar case in this district, "Defendant is confusing subject matter jurisdiction under the Declaratory Judgment Act with subject matter jurisdiction under the Sherman Act." *Encore Int'l*, 2011 WL 311014, at *8. Getac's *Handgards* and *Walker Process* claims are not rendered moot by the covenant not to sue, but their existence as separate counterclaims does not save the fifth and eighth counterclaims. Indeed, a *Walker Process* "action does not directly seek the patent's annulment." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176 (1965). In many ways, these circumstances are analogous to those in *Walker Process* itself, where the claim for declaratory judgment of invalidity was mooted by a patent's expiration, but the Sherman Act claim remained viable based on the same allegations of bad faith conduct. *Encore Int'l*, 2011 WL 311014, at *9 (citing *Walker Process*, 382 U.S. at 174–78). As such, despite the declaratory judgment counterclaim being moot, Getac is not precluded from arguing invalidity or inequitable conduct as critical components of its separate antitrust counterclaims.

Accordingly, there is no jurisdictional basis for the fifth or eighth counterclaims, so the Court GRANTS Panasonic's Motion as to the mootness of both counterclaims.

### B. Getac's Inequitable Conduct Counterclaims

Getac's eighth, twelfth, and thirteenth counterclaims, its *Walker Process* claims, allege inequitable conduct in violation of Section 2 of the Sherman Act. While the eighth counterclaim is moot, as analyzed above, its allegations underlie the twelfth and thirteenth counterclaims.

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). The proponent of the defense must provide "clear and convincing evidence [to] show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)) (emphasis in original). The accused infringer must prove two separate elements, intent and materiality. District courts may infer intent from circumstantial evidence, but the "conduct must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances," rather than mere gross negligence. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 873 (Fed. Cir. 1988) (en banc) (emphasis added). Simply "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290. The second element requires proving but-for materiality, meaning that the "PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291.

Getac alleges that Panasonic and its designers mislead the patent examiner by withholding information about a prior utility patent application and two of Panasonic's rugged notebook products, then used the resulting invalid patent to eliminate competition. *See* Answer ¶¶ 155–56, 169–70. Panasonic argues that the *Walker Process* counterclaims fail as a matter of law because the asserted prior art is not material and there is no evidence of specific intent to deceive the PTO. Plaintiff MSJ at 17–18. Getac responds that conflicting expert opinions on the materiality of the prior art demonstrate a genuine dispute of fact, Defendant Opp'n at 11, and that Mr. Nakatani and Mr. Koide's substantial experience with similar design patents, combined with their decision to submit no prior art during prosecution of the D'994 patent, supports an inference of intent to deceive, *id.* at 12, 17. At argument Getac discussed several pieces of prior art; each of the pieces appeared to have differences from the patents at issue including raised handle feet, different handle connection angles, and changed bevels and chamfers. These differences reflect on the lack of materiality of the asserted prior art.

Getac next argues that because all reasonable inferences must be drawn in the nonmovant's favor at summary judgment, the question before the Court is whether no reasonable trier of fact could reach an inference of deceptive intent. *Id.* at 7. However, the standard for intent is more stringent than Getac represents: deceptive intent may not be simply one possible inference, it must be the "single most reasonable inference to be drawn from the evidence." *Exergen Corp. v. Kaz USA, Inc.*, 120 F. Supp. 3d 1, 7 (D. Mass. 2015) (quoting *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1351 (Fed. Cir. 2013)).

Here, potential reasonable inferences include forgetting the prior art over the several years prior to the D'994 patent; misunderstandings between Japanese and American patent prosecution standards; belief that the prior art was not material or similar; and intent to deceive. *See* Plaintiff Reply at 16. While Getac spends nine pages of briefing on facts that support an inference of Mr. Nakatani and Mr. Koide's intent to deceive the PTO, those facts appear to show only that the men knew about the three prior references and should have known that they might be material. *See* Defendant Opp'n at 12–20. But "[a] court can no[t] infer intent to deceive from non-disclosure of a reference solely because that reference was known and material." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1372–73 (Fed. Cir. 2012). Moreover, the applications for the other three patents at issue here also contain no prior art provided by the applicant. While the Court is concerned about Panasonic not disclosing any prior art as a practice, this consistency suggests that it may simply be the norm for Panasonic's Japanese design and patent teams. The D'994 examiner also added several prior art references from their own search, suggesting that this was not an application considered in a vacuum such that any of the suggested prior art would have been necessarily prevented the patent from issuing. The factual record and the existence of several reasonable inferences forecloses the possibility of the jury finding that deceptive intent is the single most reasonable inference to be drawn from the evidence before them.

Because Defendant has not produced evidence sufficient to establish the intent element of its inequitable conduct counterclaims under the Federal Circuit's high bar, the Court GRANTS Panasonic's Motion as to counterclaims twelve and thirteen.

**C. Getac's *Handgards* Counterclaims**

Getac's fourteenth and fifteenth counterclaims, its *Handgards* claims, also allege violations of Section 2 of the Sherman Act. To establish a *Handgards* claim, the defendant must establish (1) that the plaintiff's "[]claim for patent infringement was 'objectively baseless' i.e., no reasonable litigant could have realistically expected success on the merits;" and (2) the plaintiff's "subjective motive in asserting the claim was an attempt to interfere directly with [defendant's] business relations." *Scripto-Tokai Corp. v. Gillette Co.*, No. 91-cv-02862-LGB, 1994 WL 746072, at *13 (C.D. Cal. Sept. 9, 1994) (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993)). "If [the defendant] does not provide this Court with sufficient admissible evidence to establish the first prong of the analysis, that is the end of the inquiry." *Id.* The Court uses a probable cause standard, which in "civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Professional Real Estate Investors*, 508 U.S. at 62–63.

Getac alleges that Panasonic's use of higher-resolution drawings from the Supplemental Complex Repository for Examiners ("SCORE") database in its Complaint misrepresented the asserted patents, and that reliance on the SCORE drawings and inconsistent use of dotted and solid lines demonstrates that the patents are indefinite and therefore invalid. Answer ¶¶ 192–93.

In its Claim Construction Order, the Court held that "[t]he image degradation issue does not render the patents indefinite" and "that it is appropriate to reference the SCORE images to determine the scope of the patents at issue" since they are in the patents' prosecution histories. Claim Construction Order at 7. The Court also held that Getac's allegations of "misleading descriptions," which were based on perspective versus isometric drawings and differences between patent titles and solid lines in the drawings, were "minor and would not prevent someone with ordinary skill in the art from understanding the scope of the design with reasonable certainty." *Id.* at 9. Given the Court's prior ruling, Getac cannot maintain that Panasonic's claim for infringement was "objectively baseless" due to indefiniteness.

Getac argues that it alleges other theories of invalidity besides the patents being indefinite. Defendant Opp'n at 21. Getac notes that its counterclaims incorporated by reference

paragraphs 109–160 and 191–215 of its Answer, which allege that the four patents obvious based on prior art, *id.* ¶¶ 112, 120, 127, 135; that three patents are primarily functional, Answer ¶¶ 114, 129, 137; and that the D'994 patent is invalid due to inequitable conduct and fraud on PTO, *id.* ¶ 159. However, the *Handgards* claim in the Answer alleged that "Panasonic's reliance on drawings other than those included in the issued patents evidences Panasonic's knowledge that the figures of the asserted patents . . . are indefinite, invalid, and unenforceable, as further described in Getac's counterclaims for invalidity of the asserted patents." *Id.* ¶ 193. At argument, Getac noted that its interrogatory responses also referenced other invalidity theories including prior art references. However, given the Court's prior ruling on indefiniteness and its rulings in this order on prior art, Getac has not adequately demonstrated that Panasonic could not have had "a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Professional Real Estate Investors*, 508 U.S. at 62–63.

Getac has provided insufficient evidence with respect to its invalidity theories that Panasonic's claims were "objectively baseless," so the Court GRANTS Panasonic's Motion with respect to counterclaims fourteen and fifteen.

### D. Getac's Derivative Claims

Getac's fourth affirmative defense, unclean hands, and fifth affirmative defense, patent misuse, are both based on its *Handgards* claims, which rely on Panasonic's use of SCORE drawings. Answer ¶¶ 73, 74. Since Getac's *Handgards* claims fail as a matter of law, as discussed above, these affirmative defenses also fail. Accordingly, the Court GRANTS Panasonic's Motion as to Getac's fourth and fifth affirmative defenses.

Getac's sixteenth counterclaim alleges unfair competition in violation of California Business & Professions Code § 17220, and is based on its Sherman Act claims (counterclaims 12–15) and unclean hands and patent misuse affirmative defenses (4 and 5). This counterclaim fails as all of those claims fail as a matter of law, so the Court GRANTS Panasonic's Motion as to Getac's sixteenth counterclaim.

## IV. GETAC'S MOTION FOR SUMMARY JUDGMENT

### A. Primarily Functional Patents

Design patents are invalid when the "patented design is primarily functional rather than ornamental." *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986). A design "is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article." *PHG Techs., LLC v. St. John Companies, Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (internal quotation marks and citation omitted). In determining whether a design is primarily functional, the Federal Circuit has "often focused [] on the availability of alternative designs as an important—if not dispositive—factor in evaluating the legal functionality of a claimed design." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329–30 (Fed. Cir. 2015). When that factor is not dispositive, the court may consider the five *PHG* factors: (1) whether the protected design represents the best design; (2) whether alternative designs would adversely affect the utility of the specified article; (3) whether there are any concomitant utility patents; (4) whether the advertising touts particular features of the design as having specific utility; and (5) whether there are any elements in the design or an overall appearance clearly not dictated by function. *PHG*, 469 F.3d at 1366. "Whether a patented design is functional or ornamental is a question of fact." *Id.* at 1365. A patent's validity "must be evaluated based on what it claims rather than on the totality of the claims of multiple patents." *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1567 (Fed. Cir. 1996).

Getac argues that Panasonic's patents are primarily functional in that their shapes are dictated by function as with a key and matching lock. Defendant MSJ at 4. Specifically, Getac argues that the bottom edge of the tablet in the D'998 patent is designed to be inserted into and tightly lock into place with the docking cradle in the D'232 and D'634 patents. *Id.* at 5. Panasonic responds that each patent claims a distinct portion of a portable computer or tablet and that design patents cannot be combined when assessing their individual functionality. Plaintiff Opp'n at 6–7. Part of the issue here is that design patents may only include one claim, while utility patents may include many claims. Regardless, the aesthetic relationship between Panasonic's design patents is not dispositive. As the Federal Circuit has explained, "even in this

context of a consumer preference for a particular design to match other parts of a whole, the aesthetic appeal of a design to consumers is inadequate to render that design functional." *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1319 (Fed. Cir. 2019).

In addition, Panasonic proposes several alternative designs to each of the challenged patents. *Id.* at 8–11. The proposed alternatives to the D'232 patent (the cradle) include a canoe-shaped cradle with a raised center flange and a flat cradle with a full-length back flange for support. *Id.* at 9. The proposed alternatives to the D'998 patent (the tablet bottom) include one of Panasonic's products, the CF-33, which moves the control buttons to the bottom edge and lacks a recessed area across the bottom. *Id.* at 10. The proposed alternatives to the '634 patent (the cradle's internal design) include several of Panasonic's products which remove elements from the configuration of the base dock. *Id.* at 11. Getac responds that these alternative designs do not perform similar functions, since the shape and wall of the cradle is critical to ensure a stable and tight mechanical and electrical connection, and that changing the designs would necessitate changing the corresponding parts. Defendant Reply at 10–13. When "other designs could produce the same *or similar* functional capabilities, the design of the article in question is likely ornamental, not functional." *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) (emphasis added). A jury could reasonably find that the proposed alternative designs produce similar functional capabilities.

However, for the avoidance of doubt, the Court also considers other relevant *PHG* factors. At argument, Getac discussed Panasonic's related utility patents at length. However, those utility patents do not specify any of the specific features claimed as ornamental, such as the angle of the raised edges, how far the center drops down at the bottom of the tablet, or the exact placement of the hinges and electrical components. Although there are related utility patents to the design patents at issue here, "a valid design may contain some functional elements. After all, a design patent's claim protects an article of manufacture, which necessarily serves a utilitarian purpose." *Auto. Body Parts*, 930 F.3d at 1318 (internal quotation marks and citation omitted).

Panasonic's proposed alternative designs raise a genuine dispute of material fact as to whether the patents at issue are ornamental. As such, the Court DENIES Getac's Motion as to functionality.

### B. Improper Inventorship

Courts presume that the named inventors on a patent are the true and only inventors. *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004). However, a patent is invalid if more or fewer than the true inventors are named. *Id.* "All that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). Inventorship is a question of law. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

On a motion for summary judgment, the party challenging a patent must prove by clear and convincing evidence that the invention was made by another inventor. *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012). The burden then shifts "to the patentee to produce evidence sufficient to create a genuine issue of material fact as to whether the prior inventor has suppressed or concealed the invention." *Id.*

"Incorrect inventorship is a technical defect in a patent that may be easily curable." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1089 (Fed. Cir. 1998). As such, "[i]f a patentee demonstrates that inventorship can be corrected . . . a district court must order correction of the patent, thus saving it from being rendered invalid." *Pannu*, 155 F.3d at 1350. Correction is inappropriate only when the failure to join co-inventors was the result of deceptive intent. *See* 35 U.S.C. § 256; *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000).

Getac argues that Mr. Hitoshi Nakatani is an unlisted co-inventor of the D'232 patent. Defendant MSJ at 12. Getac notes that Mr. Nakatani is a listed inventor on the D'634 patent, which claims the design for the interior of a canoe-shaped portable computer docking cradle, including internal surfaces and components. Specifically, Getac argues that Mr. Nakatani's testimony that he contributed to the interior design and raised ends of the D'634 design mean that he is necessarily an inventor of those same components of the D'234 patent, which claims the design for a canoe-shaped portable computer docking cradle with 45-degree raised ends and two rectangular legs that pivot. *Id.*

Panasonic responds that Mr. Nakatani's testimony is ambiguous, since Mr. Nakatani's other statements about his relatively small contribution to the D'232 design mean that the portion highlighted by Getac is taken out of context. Plaintiff Opp'n at 16. Panasonic also argues that the D'232 patent was broader than the D'634 patent, meaning that Mr. Nakatani's contribution to the interior design was less significant in the D'232 patent. *Id.* at 17 (citing *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (significance of contribution to claimed invention is measured against dimension of full invention)). Additionally, Getac makes no argument in its papers about deceptive intent on Panasonic's part, which would be necessary to preclude curing any defect in inventorship. However, Getac notes that Panasonic has not sought to cure the patent. Defendant Reply at 19.

Given the disputed testimony about the scope of Mr. Nakatani's contributions to the D'232 patent, there is a genuine dispute of material fact that renders this issue inappropriate for summary judgment. As such, the Court DENIES Getac's Motion as to improper inventorship.

### C. Willful Infringement

Getac next seeks summary judgment that there was no willful infringement of Panasonic's patents. Defendant MSJ at 14. Willfulness may be found when a party shows, by a preponderance of the evidence, that an infringer has engaged in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016).

Getac argues that since it has reasonable defenses to the infringement claims, its conduct cannot constitute willful infringement. Defendant MSJ at 15. However, the Supreme Court rejected the idea that "[t]he existence of such a defense insulates the infringer from enhanced damages," instead holding that courts should consider "the particular circumstances of each case" while generally looking for "willful misconduct." *Halo*, 579 U.S. at 105–06. The patentee must prove only subjective willfulness, meaning that the defendant acted despite a risk of infringement that was "either known or so obvious that it should have been known to the accused infringer." *Id.* at 97.

Getac also argues that Panasonic's claims are based solely on the fact that Getac knew of the patents at issue, continues to market and sell the K120 and UX10 products, and is pursuing this litigation. Defendant MSJ at 14. Panasonic responds that there is substantial evidence that Getac "specifically intended to copy" Panasonic's designs, including testimony from several of Getac's current and former employees. Plaintiff Opp'n at 18–20. Getac raises credibility and bias concerns about at least one of these former employees.

In addition, at argument Getac contended that the non-SCORE drawings used in the patents at issue are so degraded and unclear that a competitor would not be able to appreciate the risk of infringement. This argument is tenuous at best: while the images differ in resolution, any reasonable designer would be able to see the clear lines in the drawings and understand whether a new design was materially the same.

The evidence in the record creates a genuine dispute of material fact and would allow a reasonable jury to find subjective willfulness. As such, the Court DENIES Getac's Motion with respect to willful infringement.

### D. Scope of Article of Manufacture

Section 289 of the Patent Act allows design patentees to recover an infringer's profits made from the manufacture or sale of the "article of manufacture to which [the patented] design or colorable imitation has been applied." 35 U.S.C. § 289. The first step in the § 289 analysis is to "identify the 'article of manufacture' to which the infringed design has been applied."

*Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016). In the case of a multicomponent product, the Article of Manufacture ("AOM") may include either "a product sold to a consumer [or] a component of that product, whether sold separately or not." *See id.* at 434–36 (overruling the Federal Circuit's "reading [of] 'article of manufacture' in § 289 to cover only an end product sold to a consumer [as] giv[ing] too narrow a meaning to the phrase.").

Neither the Supreme Court in *Samsung* nor the Federal Circuit on remand adopted a test for determining the appropriate AOM. The district court on remand used the U.S. Solicitor General's proposed four considerations:

(1) "The scope of the design claimed in the plaintiff's patent, including the drawing and written description;"

(2) "The relative prominence of the design within the product as a whole;"

(3) "Whether the design is conceptually distinct from the product as a whole;" and

(4) "The physical relationship between the patented design and the rest of the product, including whether the design pertains to a component that a user or seller can physically separate from the product as a whole, and whether the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately."

*Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2017 WL 4776443, at *11 (N.D. Cal. Oct. 22, 2017) (quoting Brief for United States as Amicus Curiae Supporting Neither Party, *Samsung*, 137 S. Ct. 429, 2016 WL 3194218, at *27–29); *see also Nike, Inc. v. Skechers U.S.A., Inc.*, No. 2:17-cv-08509-JAK, 2020 WL 10486482, at *17 (C.D. Cal. Oct. 26, 2020) (adopting same considerations). This Court finds the reasoning of the Northern District court persuasive and sensible and adopts the four considerations proposed by the Solicitor General.

Getac argues that Panasonic's Article of Manufacture ("AOM") for the D'232 patent improperly includes two separate end products, the detachable K120/UX10 keyboard and the K120/UX10 tablet. Defendant MSJ at 16. Getac claims that it prices, markets, and sells the tablet and keyboard separately. *Id.* at 18. Panasonic argues that the D'232 design is a significant attribute of the K120 and UX10 portable computers as a whole. Plaintiff Opp'n at 23.

Getac first argues that the D'232 patent excludes the tablet by rendering it in dashed lines, and that the design is applied only to the keyboard. Defendant MSJ at 17–18. The Court's claim construction order did not construe the tablet as part of the claimed design in the D'232 patent, though it described the patent as a "design for a portable computer." *See* Claim Construction Order at 11. Panasonic responds that the title of the D'232 patent is "Portable Computer," and that the claim description, figures, and figure descriptions also refer to a portable computer. Plaintiff Opp'n at 23. As the PTO explains, "the title may be directed to the entire article embodying the design while the claimed design shown in full lines in the drawings may be directed to only a portion of the article." See MANUAL OF PATENT EXAMINING PROC. § 1503.01. The Northern District in *Samsung* also noted that "the relevant article of manufacture may extend beyond the scope of the claimed design." *Samsung*, No. 11-cv-01846-LHK, 2017 WL 4776443, at *10.

As Panasonic notes, the parties' experts disagree on the appropriate scope of the AOM. Plaintiff Opp'n at 22; *see Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2018 WL 1990223, at *1 (N.D. Cal. Mar. 27, 2018) ("There is clearly a dispute of material fact about the relevant article of manufacture, as evidenced by the competing expert reports.").

The parties' positions on the claimed designs and the conflicting expert positions on the AOM create disputes of material fact. Accordingly, the Court DENIES Getac's Motion with respect to the Article of Manufacture.

## V. DISPOSITION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

DATED: February 28, 2022

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE