Kenneth G. Parker, SBN 182911
  Ken.parker@haynesboone.com
Jason T. Lao, SBN 288161
  Jason.lao@haynesboone.com
Andrea Levenson, SBN 323926
  Andrea.levenson@haynesboone.com
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, CA  92626
T: (949) 202-3000 │ F: (949) 202-3001

[ADDITIONAL CAPTIONS NEXT PAGE]

Attorneys for Plaintiff
*PANASONIC HOLDINGS CORPORATION*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANASONIC HOLDINGS CORPORATION,<br><br>        Plaintiff,<br><br>   v.<br><br>GETAC TECHNOLOGY CORPORATION and GETAC, INC.,<br><br>        Defendants. | CASE NO. 8:19-cv-01118-DOC-DFM<br><br>**PLAINTIFF PANASONIC HOLDINGS CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:     October 4, 2022<br>Time:    7:30 a.m.<br>Ctrm:   10A<br><br>Complaint Filed: June 5, 2019<br>Trial Date: May 31. 2022 |

William H. Frankel (IL Bar No. 3127933;
admitted *pro hac vice*)
   wfrankel@crowell.com
Tadashi Horie (IL Bar No. 6256941;
admitted *pro hac vice*)
   thorie@crowell.com
Andrew S. McElligott (IL Bar No. 6317538;
admitted *pro hac vice*)
   amcelligott@crowell.com
**CROWELL AND MORING LLP**
455 N. Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

Attorneys for Plaintiff
*PANASONIC HOLDINGS CORPORATION*

# **TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................1

II.     THIS CASE IS EXCEPTIONAL UNDER 285 AND PANASONIC IS ENTITLED TO ATTORNEYS' FEES.....................................................1

    A.   Getac Did Not Present Strong Defenses ................................................2

    B.   Getac's Attempt to Re-litigate And Deliberately Mischaracterize The Record Before This Court Is Improper and Futile ....................................3

    C.   Getac's Willful Infringement Makes This Case Exceptional .................5

    D.   The Evidence of Getac's Willful Infringement is Strong ......................7

III.    GETAC'S LITIGATION CONDUCT WAS UNREASONABLE ..........9

    A.   Getac's frivolous insistence on an amended complaint due to SCORE drawings ........................................................................................9

    B.   Getac's continued and frivolous insistence that SCORE Drawings were not part of the patents, despite clear statements in the file histories........9

    C.   Witness scheduling Getac's unreasonableness regarding witness scheduling in the height of COVID-19, necessitating expensive motion practice and court involvement ................................................................10

    D.   994 patent Getac failed to drop its declaratory relief claims for noninfringement and invalidity, despite all claims of the '994 Patent being dismissed ...........................................................................................11

    E.   Getac's refusal to identify when it learned of the patents-in-suit led to unnecessary motion practice .............................................................12

    F.   Getac's overbroad privilege objections in Mr. Shainman's deposition, forcing motion practice and forcing judge McCormick to supervise the deposition ...........................................................................................13

    G.   Getac backed out of its agreement to play witness testimony or to produce witnesses identified on both parties' witness lists, requiring motion practice.......................................................................................14

    H.   Getac's attempts to confuse the jury ....................................................15

    I.   Financial stipulation Getac's refused to stipulate to the authenticity of its own financial documents at trial, forcing Panasonic to notice deposition during trials ......................................................................................16

i

        J.      This Case Is Exceptional ...................................................................17

IV.     THE FEES SUBMITTED TO THIS COURT ARE APPROPRIATE

        AND REASONABLE ..................................................................................18

V.      CONCLUSION ...........................................................................................19

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. Am. Power Conversion Corp.*,
  No. 2:02-CV-113TJW, 2004 WL 5698341 (E.D. Tex. Apr. 27,
  2004) ................................................................................................................5

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*,
  853 F.2d 1557 (Fed. Cir. 1988) ........................................................................5

*Beatrice Foods Co. v. New England Printing & Lithographing Co.*,
  923 F.2d 1576 (Fed. Cir. 1991) ........................................................................5

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  315 F. Supp. 3d 977 (N.D. Ill. 2018)................................................................6

*Enovsys LLC v. AT&T Mobility LLC*,
  No. CV 11-5210 SS, 2016 WL 3460794 (C.D. Cal. Feb. 16, 2016) .................2

*Finjan, Inc. v. Sophos, Inc.*,
  244 F. Supp. 3d 1016 (N.D. Cal. 2017) .....................................................16, 17

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  No. 6:13-CV-366, 2016 WL 3346084 (E.D. Tex. June 16, 2016),
  aff'd, 867 F.3d 1229 (Fed. Cir. 2017) ..............................................................5

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004) ........................................................................5

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................18

*Intervet, Inc. v. Merial Ltd.*,
  256 F.R.D. 229 (D.D.C. 2009) ........................................................................12

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ........................................................................18

*Micron Tech., Inc. v. Rambus Inc.*,
  645 F.3d 1311 (Fed. Cir. 2011) ......................................................................13

iii

*Modine Mfg. Co. v. Allen Group, Inc.*,
 917 F.2d 538 (Fed. Cir. 1990) ...................................................................... 5

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
 726 F.3d 1359 (Fed. Cir 2013) .................................................................... 8

*National Presto Indus. v. West Bend Co.*,
 76 F.3d 1185 (Fed. Cir. 1996) ..................................................................... 4

*Nova Chemicals Corp. (Canada) v. Dow Chem. Co.*,
 856 F.3d 1012 (Fed. Cir. 2017) .................................................................. 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 572 U.S. 545 (2014) ..................................................................................... 2

*Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*,
 421 F. Supp. 3d 410 (E.D. Tex. 2019) ....................................................... 11

*Praseuth v. Rubbermaid, Inc.*,
 406 F.3d 1245 (10th Cir. 2005) .................................................................. 18

*Quesada v. Thomason*,
 850 F.2d 537 (9th Cir. 1988) ...................................................................... 18

*Scharfenberger v. Sec'y of Health & Hum. Servs.*,
 124 Fed. Cl. 225 (2015) ............................................................................... 18

*Sure Plus Mfg. Co. v. Kobrin*,
 719 F.2d 1114 (11th Cir. 1983) .................................................................... 4

*Tate Access Floors, Inc. v. Maxcess Techs.*,
 222 F.3d 958 (Fed. Cir. 2000) ..................................................................... 5

*Vasudevan Software, Inc. v. IBM Corp.*,
 No. C 09-05897 RS (PSG), 2011 WL 1599646 (N.D. Cal. Apr. 27, 2011) ............................................................................................................ 12

*Verisign, Inc. v. XYZ.COM LLC*,
 891 F.3d 481 (4th Cir. 2018) ....................................................................... 2

*Wallace Computer Servs., Inc. v. Uarco Inc.*,
 887 F.2d 1095 (Fed. Cir. 1989) ................................................................... 6

iv

**Statutes**

35 U.S.C. § 285........................................................................................1, 2, 5, 6, 8, 18

Lanham Act ......................................................................................................................2

**Other Authorities**

Federal Rule Of Civil Procedure 30(c)(2) .............................................................13

## I.    <u>INTRODUCTION</u>

Panasonic is seeking attorneys' fees for Getac Technology Corporation and Getac, Inc.'s (collectively "Getac" or Defendants") bad faith willful infringement which continued after the trial, its multiple and repeated instances of litigation misconduct in violation of this Court's orders and instructions, and for its exceptionally meritless arguments made throughout the litigation. In its Opposition, Getac attempts to justify its misconduct by mischaracterizing the record while citing to no authority. Getac's attempt to shift the blame to Panasonic and *this Court* only further underscores the exceptional nature of this case. Indeed, rather than addressing its litigation behavior within the totality of the circumstances in determining whether a case is exceptional, Getac resorts to rearguing the Jury verdict, this Court's orders, and its non-infringement and defenses theories.

Having willfully infringed the patents-in-suit[1] and having continued in its willful infringement of the asserted patents even after losing at trial; having repeatedly presented improper arguments to both this Court and the Jury; and having engaged in indefensible litigation tactics, it is only fair that Getac bear the expenses caused by its conduct. Accordingly, Panasonic respectfully requests that this Court award reasonable attorneys' fees, costs, expert witness fees, pre judgment interests, and post judgment interest against Getac.

## II.    <u>THIS CASE IS EXCEPTIONAL UNDER 285 AND PANASONIC IS ENTITLED TO ATTORNEYS' FEES</u>

Getac does not dispute that Panasonic is the "prevailing party" under 35 U.S.C. § 285. As such, the only question is whether this case is also "exceptional" under § 285. The answer is undeniably yes. Panasonic need only show—by a preponderance of evidence—that this case was one "that stands out from others

---

[1] U.S. Patent Nos. D766,232 (the "D'232 patent"), D756,998 (the "D'998 patent"), and D785,634 (the "D'634 patent") (collectively, the "asserted patents").

1    with respect to the substantive strength of a party's litigating position (considering

2    both the governing law and the facts of the case) or the unreasonable manner in

3    which the case was litigated." *Octane Fitness,* LLC, 572 U.S. 545, 554 (2014).

4    Here, this standard has been met.  This case is clearly exceptional because Getac

5    willfully infringe the patents-in-suit and engaged in multiple, repeated instances of

6    litigation misconduct.

7           In an attempt to confuse this Court, Getac consistently misstates the

8    standard set forth by the United States Supreme Court in *Octane Fitness* as "a

9    very high bar".  (*See*, *e.g.*, Opp., at 1-2.)  Yet, quite the opposite, in *Octane*

10   *Fitness*, the Supreme Court **lowered** the standard for awarding attorneys' fees

11   under § 285, rejecting the Federal Circuit's prior *Brooks Furniture* test as "unduly

12   rigid" and too "demanding."  *Octane Fitness, LLC v. ICON Health & Fitness,*

13   *Inc.*, 572 U.S. 545, 553, 556 (2014) (emphasis added).

14          Again, in striking contrast to Getac's assertions, the standard for

15   exceptionalness does not *require* bad faith or egregiousness, but either may

16   warrant fees.  *Enovsys LLC v. AT&T Mobility LLC*, No. CV 11-5210 SS, 2016

17   WL 3460794, at *7 (C.D. Cal. Feb. 16, 2016) ("a finding of bad faith is not

18   required for a case to be deemed 'exceptional,' and an action can be found

19   exceptional under Section 285 even when the nonmoving party's case is not

20   'objectively baseless' and the nonmoving party's litigation tactics are not

21   independently sanctionable.") (collecting cases); *Verisign, Inc. v. XYZ.COM LLC*,

22   891 F.3d 481, 489 (4th Cir. 2018) (applying *Octane Fitness* to a Lanham Act case

23   and reversing and remanding because egregious conduct met the standard under

24   *Octane Fitness*).

25          A.    **Getac Did Not Present Strong Defenses**

26          Getac attempts to confuse this Court by asserting that this case is not

27   exceptional because its defenses were not "frivolous or made in bad faith."  (Opp.

28   at p. 3.)  However, the objective unreasonableness of a party's position is **no**

2

1    *longer a prerequisite to awarding attorneys' fees*, it is only a consideration.

2    *Nova Chemicals Corp. (Canada) v. Dow Chem. Co*., 856 F.3d 1012, 1017 (Fed.

3    Cir. 2017) (emphasis added).  Getac did not present strong defenses—but even if

4    it did its litigation misconduct and the jury's willfulness verdict still renders this

5    case exceptional.

6         **B.**    <u>**Getac's Attempt to Re-litigate And Deliberately Mischaracterize**</u>

7            <u>**The Record Before This Court Is Improper and Futile**</u>

8         *First*, Getac's attempt to relitigate the merits of its case-in-chief by again

9    proffering arguments and evidence previously considered and rejected by this

10   Court and the Jury is a distraction.  For example, Getac burdens this Court with an

11   entire *three pages* addressing what it believes to be proof that the "patented

12   designs were 'plainly dissimilar,' especially to the 'ordinary observer'" and "[a]

13   sophisticated purchaser could easily see that the accused cradles with the offset

14   latches are not the patented cradles with the centered latch."  (Opp. at pp. 3-6.)

15   These claims are flatly inconsistent with the record before this Court.  The Jury

16   found that the patented designs *were* plainly similar to the ordinary observer.[2]

17   And testimony presented before and at trial show as much.[3]  Getac simply ignores

18   these express findings and critical evidence.  Given this record, Getac cannot

19   credibly claim, as it does now, that the asserted patents are "plainly dissimilar" to

20

21

22   [2] (Dkt. 389 Joint Verdict Form [Has Panasonic proved by a preponderance of the
23   evidence that Getac infringed the [patent-in-suit] . . . yes (for Panasonic]; Dkt. 401
     Judgement [Getac has willfully infringed U.S. Patent Nos. D766,232 (the "D'232
24   Patent"), D756,998 (the "D'998 Patent"), and D785,634 (the "D'634 Patent")].)

25   [3] As Joe DeWenter, Getac's Senior Product Marketing Manager, explained, "there was
     no intention to make them look different"; the UX10 simply looks like a smaller version
26   of the K120. (Declaration of Jason T. Lao in support of Panasonic's Reply to its Motion
     for Attorneys' Fees and Costs ("Lao Decl."), Exh. F at 148:23–149:8.) Further, former
27   Getac North America President Scott Shainman complained to Daniel Lin, Getac's chief
     product manager, that "Getac is not coming out with anything new or exciting, we just
28   copied Panasonic CF33." (Dkt. 200 p. 18-21.)

3

the "ordinary observer."  Accordingly, this Court should disregard Getac's vague and improper attempt to re-argue the decision of the Jury and this Court.

**Second**, in an attempt to mischaracterize the record before this Court, Getac argues that its legal defenses were reasonable because "Panasonic did not move for summary judgment."  (Opp. at p. 6.)  As this Court is aware, Panasonic did move for Summary Judgment on nine counts—all of which it was successful on.  (Dkt. 184 [Panasonic's Motion For Summary Judgment]; Dkt. 281 [Order Granting Plaintiff's Motion For Summary Judgment [184] And Denying Defendant's Motion For Summary Judgment [185]].)  Conveniently, Getac does not address that it also moved for Summary Judgment and lost on all counts.  (Dkt. 281 [Order Granting Plaintiff's Motion For Summary Judgment [184] And Denying Defendant's Motion For Summary Judgment [185]].)

Panasonic simply did not have the page space in a single motion to move for summary judgment on all of Getac's claims and defenses.[4] The direct cause of this was Getac's unexplained and frivolous refusal to drop unnecessary and superfluous issues.  For example, Getac forced Panasonic to use substantial page space to address moot claims such as Declaratory Judgment of Invalidity of the D'994 Patent, Declaratory Judgment of Unenforceability of the D'994 Patent for Inequitable Conduct, the affirmative defenses Patent Misuse, and others.  (Dkt. 184 [Panasonic's Motion For Summary Judgment].)  The maintenance of frivolous claims was a litigation tactic employed by Getac: It forced unnecessary motion practice such that Panasonic could not move for summary judgment on all of Getac's claims and defenses.

**Third**, Getac argues that its legal positions were reasonable because the USPTO agreed that the products were plainly dissimilar by granting Getac its own

---

[4] It is the rule of this Court that "Memoranda of Points and Authorities are subject to a 25-page limit; only in rare cases and for good cause shown will the Court grant leave to exceed that page limitation." See https://www.cacd.uscourts.gov/honorable-david-o-carter (last accessed August 24, 2022.)

4

design patents.  (Opp. at p. 6.)  This is incorrect.  "The grant of a separate patent on [an] accused device does not automatically avoid infringement, either literal or by equivalency."  *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1191 (Fed. Cir. 1996); *Sure Plus Mfg. Co. v. Kobrin*, 719 F.2d 1114, 1117 (11th Cir. 1983) (no presumption of non-infringement arises from the issuance of a patent to the infringer).  To reiterate, just because Getac received patents that contain more features than Panasonics patents-in-suit, does not mean that the USPTO agreed that the patents were plainly dissimilar.  As referenced above, not only is Getac's argument in direct contradiction to the findings of this Court and the Jury, this also demonstrates Counsel's complete misunderstanding of patent design law.

## C.   Getac's Willful Infringement Makes This Case Exceptional

Getac attempts to downplay the significance of the Jury's willfulness infringement verdict by asserting that a willfulness verdict is not enough to make a case exceptional under 35 U.S.C. § 285.  (Opp. at p. 7.)  This is wrong.  Precedent on this issue is clear—the Federal Circuit has consistently held that "the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner."  *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988); *S.C. Johnson & Son, Inc. Carter-Wallace, Inc.*, 781 F.2d 198, 200 (Fed. Cir. 1986); *see also Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004).[5]

Consistent with this general trend, courts have repeatedly held that a jury finding of willful infringement is sufficient to render a case exceptional under §

---

[5] *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990); *see also Tate Access Floors, Inc. v. Maxcess Techs.*, 222 F.3d 958, 972 (Fed. Cir. 2000) (finding an abuse of discretion when the district court did not provide sufficient rationale for denying attorney's fees in light of jury's willfulness finding); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1578 (Fed. Cir. 1991) (The decision to award such enhanced damages may be based on willful infringement).

285.  *See ACCO Brands, Inc. v. Am. Power Conversion Corp*., No. 2:02-CV-113TJW, 2004 WL 5698341, at \*7 (E.D. Tex. Apr. 27, 2004) ("The facts underlying the Defendants' willful infringement persuade this Court that this case is exceptional"); *Georgetown Rail Equip. Co. v. Holland L.P.,* No. 6:13-CV-366, 2016 WL 3346084, at \*22 (E.D. Tex. June 16, 2016), aff'd, 867 F.3d 1229 (Fed. Cir. 2017) (emphasis added) (a jury finding of willful infringement "alone is a 'compelling' indication that this is an exceptional case."); *see also Wallace Computer Servs., Inc. v. Uarco Inc*., 887 F.2d 1095 (Fed. Cir. 1989) ("We sustain the court's finding that the case was 'exceptional' within the meaning of 35 USC 285 based on the finding that Uarco's infringement was willful").

As explained more fully in Panasonic's Motion, Getac's willful infringement is exactly the type of conduct that transforms an ordinary infringement case into an exceptional one.  For example, instead of developing its own innovative designs, Getac's business model was to steal and use key parts of Panasonic's designs, ultimately introducing copycat products into the market to compete.  The Jury confirmed the same, finding that Getac willfully infringed all three of Panasonic's asserted patents.  (Dkt. 389 [Jury Verdict Form].)

Finally, Getac's assertion that its legal defenses "were not frivolous or asserted for an improper purpose" because this was a "close case" is unfounded. (Opp. at p. 8.)  This was not a close case.  Notably, Getac cites to nothing in the record to evidence that this was a close case.  This is because it cannot.  Panasonic prevailed on every substantive issue at every stage of this litigation leading up to trial, including claim construction and summary judgment.  (Dkt. 281 [Court's Order On Summary Judgment] and Dkt. 115 [Court's Order on Claim Construction].)  And, at trial, the jury unanimously returned a verdict for Panasonic on all issues, finding infringement and no invalidity for all asserted patents, willfulness, and emphatically rejecting Defendants proposed damages model.  (Dkt. 389 [Jury Verdict Form]; *see also Chamberlain Grp., Inc. v.*

6

1  *Techtronic Indus. Co*., 315 F. Supp. 3d 977, 1014 (N.D. Ill. 2018) (finding case

2  exceptional where defendants "lost on every issue at trial after less than two hours

3  of jury deliberation").

4      Getac incorrectly suggests that Panasonic asserted that a willful

5  infringement verdict creates a presumption that this case is exceptional.

6  Panasonic never said that. But it remains true that the willfulness finding,

7  standing alone, is sufficient for this Court to find the case exceptional.

8      **D.    The Evidence of Getac's Willful Infringement is Strong**

9      ***First***, Getac argues the willful infringement evidence is weak and

10  "insufficient." (Opp. at pp. 8-9) Again, Getac attempts to re-argue its case

11  asserting facts that are directly in contradiction with this Court's and the Jury's

12  findings[6]. Moreover, substantial evidence exists that Getac "specifically intended

13  to copy" Panasonic's designs, including testimony from several of Getac's current

14  and former employees[7]. For example, Scott Shainman ("Shainman") has testified,

15  "[Getac's product] was an exact copycat of the Panasonic CF33." (Dkt. 200

16  [Panasonic's Opposition To Summary Judgment] at p. 19.) Further, Shainman

17  admitted that Getac copied "[t]he entire product itself," and "if I put a Getac K120

18  and [Panasonic] CF-33 next to each other, and I painted them both the same color,

19  it would be very difficult for people to tell them apart."[8] (*Id*.) In fact, there is so

20

21  _____

   [6] (Dkt. 389 Joint Verdict Form [Has Panasonic proved by a preponderance of the
22  evidence that Getac infringed the [patent-in-suit] . . . yes (for Panasonic]; Dkt. 401
   Judgement [Getac has willfully infringed U.S. Patent Nos. D766,232 (the "D'232
23  Patent"), D756,998 (the "D'998 Patent"), and D785,634 (the "D'634 Patent")].)
   [7] As Joe DeWenter, Getac's Senior Product Marketing Manager, explained, "there was
24  no intention to make them look different"; the UX10 simply looks like a smaller version
   of the K120. (Lao Decl. Exh. F at 148:23–149:8.) People in the industry recognized the
25  UX10 as "Getac's answer to Panasonic's Toughbook [CF-]20" and understood that it
   was "created . . . to match" the CF-20. (Dkt. 200 [Panasonic's Opposition to Summary
26  Judgment] at p. 20.)
   [8] The Accused K120 is indeed so similar to Panasonic's products that, prior to its launch,
27  executives at Getac USA raised concerns about it "looking like a 'me too' product" of
   the 12-inch CF-33 or being "a copy of the CF-20 but bigger." Further, former Getac
28

1   much evidence detailing Getac's willful infringement that this Court denied

2   Summary Judgment in favor of Getac on this issue, and the Jury explicitly found

3   that Getac willfully infringed Panasonic's designs—despite Getac's despite efforts

4   to mislead the Jury and this Court.  (Dkt. 389 [Jury Verdict Form]; Dkt. 281

5   [Court's Order On Summary Judgment].)

6        ***Second***, Panasonic's Motion provided direct evidence of pre-suit conduct

7   that evinced willfulness despite Getac's assertion that "the trial record contains no

8   evidence that Getac knew of Panasonic's patents before this lawsuit."  (Opp. at p.

9   9.)  For example, in its Motion Panasonic points to Jiang's and Lee's testimony

10  which both provided that the K120 development team did consider Panasonics

11  patents during development.[9]  This is not "irrelevant" evidence—this clearly

12  shows that Getac knew about the patents-in-suit when designing their product.

13  This is pre-suit knowledge.

14       ***Third***, Getac did not have a reasonable belief that its actions avoided

15  infringement because of the USPTO's grant of a design patent.  (Opp. at p. 10.)

16  As discussed above in section II.A.i., the USPTO did not concluded that Getac's

17  designs did not infringe upon Panasonic's.

18       Accordingly, consistent with the longstanding tendency of district courts

19  "to award attorney fees when willful infringement has been proven," *S.C.*

20  *Johnson*, 781 F.2d at 200, this Court should find that this case is exceptional under

21  § 285 and that Getac is liable to Panasonic for reasonable attorneys' fees.

22

---

23  North America President Scott Shainman complained to Daniel Lin, Getac's chief

24  product manager, that "Getac is not coming out with anything new or exciting, we just copied Panasonic CF33." (Dkt. 200 [Panasonic's Opposition To Summary Judgement]

25  at p. 18-21.)

26  [9] See Dkt. 414-4 at 45:23-46:3 ("Q And when you are designing the product, you look to competitors' products, right? A Yes. Q And you also consider other patents in the area,

27  correct? A Yes."); Dkt. 414-4 at 14:3-13 (impeaching the witness with "Q: Did the K120 development team consider any Panasonic patents during the development of the K120

28  product? A: I would say yes. Q: Did you give that testimony on January 7th, 2021, as a corporate representative under oath? A: Yes.")

1    **III.    GETAC'S LITIGATION CONDUCT WAS UNREASONABLE**

2           Taken as a whole, Getac's litigation tactics were unreasonable and show a

3    pattern of Getac forcing Panasonic, the Court, and the Jury to address and deal

4    with issues that have little merit.  Such tactics go beyond mere zealous advocacy

5    and cross into an exceptional case for which attorneys' fees and costs should be

6    awarded.  And this misconduct cannot be cabined off to only one part of this case.

7    It was pervasive, impacting "every stage of the litigation."  *Monolithic Power*

8    *Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir 2013).  And here,

9    Getac engaged in various tactics to drive up the fees and costs associated with this

10   litigation, including at least:

11          **A.    Getac's frivolous insistence on an amended complaint due to**

12                  **SCORE drawings**

13          It is commonplace to use Supplemental Complex Repository for Examiners

14   ("SCORE") drawings in patent litigation—as such there was no "misimpression

15   that the [SCORE] illustrations in [the] complaint appear in the published patents."

16   (Opp. at p. 11.)  This is evinced by the Court's claim construction Order: "[t]he

17   Court also finds that one skilled in the art would know to look to the file history to

18   confirm their understanding of the claimed design if such clarity was necessary

19   after looking at the patent itself."  (Dkt. 115 [Court's Claim Construction Order]

20   at p. 7 fn 1.)  In no way is using SCORE drawings "fraud on the court" as declared

21   by Getac's counsel.  As such, the filing of an amended complaint only to show the

22   drawings were from the SCORE data base was frivolous.

23          **B.    Getac's continued and frivolous insistence that SCORE**

24                  **Drawings were not part of the patents, despite clear statements in**

25                  **the file histories**

26          Getac argues that its continued assertion that the patents excluded the

27   SCORE drawings was reasonable.  (Opp. at p. 12.)  Yet, this Court's claim

28   construction Order is clear that "there is no dispute that the SCORE drawings for

9

1  each of the patents are part of the patents' prosecution histories." (Dkt. 115

2  [Court's Claim Construction Order] at p. 7.)  Despite this, Getac continued to re-

3  argue this issue in its opening statement and its Summary Judgment Motion.

4       ***First***, in its Summary Judgment Motion Getac again asserted arguments

5  relevant to the SCORE drawings.  (Dkt. 185 [Getac's Motion For Summary

6  Judgment] at pp. 6-7.)  In response, this Court's Summary Judgment Order, it

7  provided :

8          Getac contended that the non-SCORE drawings used in
9          the patents at issue are so degraded and unclear that a
        competitor would not be able to appreciate the risk of
10         infringement. This argument is tenuous at best while the
        images differ in resolution, any reasonable designer
11         would be able to see the clear lines in the drawings and
12         understand whether a new design was materially the
        same.
13

14  (Dkt. 281 [Court's Order On Summary Judgment] at p. 17.)  Further, this Court

15  even stated, "[g]iven the Court's prior ruling [on claim construction SCORE

16  images], Getac cannot maintain that Panasonic's claim for infringement was

17  'objectively baseless' due to indefiniteness." (*Id.* at p. 11.)

18       ***Second***, then again at trial in its opening statement Getac proffered the

19  same SCORE drawings argument.  (Dkt. 414-2 at 43:19-24 ("So the evidence in

20  this case will show that the drawings in all of the Panasonic patents are degraded

21  so you will be looking at a special set of drawings".)  In fact, this Court had to

22  sustain an objection on this issue because as this was Getac's ***fourth*** attempt to

23  reargue the same issue.  (*Id.*)

24      **C.**    **<u>Witness scheduling Getac's unreasonableness regarding witness</u>**

25            **<u>scheduling in the height of COVID-19, necessitating expensive</u>**

26            **<u>motion practice and court involvement</u>**

27       Getac provides a misleading account of various scheduling disputes.  The

28  sole issue raised by Getac in its Motion To Compel was its unreasonable

1  insistence that Panasonic urgently make its Japanese witnesses available for their

2  depositions in the United States, notwithstanding: (1) the ongoing global

3  pandemic, (2) the fact that depositions of Japanese witnesses by video is illegal in

4  Japan, (3) the strict travel restrictions in place to curb the spread of COVID-19,

5  and (4) Panasonic's corporate prohibition against non-essential travel to the

6  United States in accordance with the Japanese government's COVID-19

7  mandates.  (Dkt. 81 [Getac's Motion To Compel].)

8          Further, Getac's opposition to scheduling relief and insistence that

9  Panasonic fly Japanese residents from Japan to the United States for deposition

10  right away led to a cascade of motion practice in front of Magistrate Judge

11  McCormick.  Panasonic was then forced to seek an *ex parte* application to

12  expedite this Court's hearing on a motion to amend the discovery cutoff and other

13  case deadlines—which Getac opposed as "a crisis of Panasonic's own making."

14  (Dkt. 85 [Panasonic's Motion To Amend Scheduling Order]; Dkt. 86 [Getac's

15  Opposition to Panasonic's Ex Parte].)[10]  In fact, Getac's opposition to this motion

16  was so frivolous that this Court granted Panasonic's *ex parte* motion without even

17  waiting for Getac's Opposition.  (Dkt. 89 [Court's Order Granting Motion To

18  Amend Scheduling Order].)

19    **D.    994 patent Getac failed to drop its declaratory relief claims for**

20          **noninfringement and invalidity, despite all claims of the '994**

21          **Patent being dismissed**

22          Getac incorrectly asserts that there was "nothing improper with Getac

23  pursuing its counterclaims against the '994 patent after Panasonic dropped that

24  patent and provided a covenant not to sue."  (Opp. at p. 13.)  Yet, expending

25  significant resources in defending against the '994 patent is not a rationale for

26  keeping irrelevant counterclaims on which Panasonic could no longer bring suit

27

28  [10] It is still unclear to Panasonic how Panasonic can be responsible for a COVID-19 pandemic and health and safety restrictions imposed by the Japanese government.

1    for.  Because Getac refused to withdraw its claims, Panasonic was forced to bring

2    a Summary Judgment Motion on these issues, which took up significant space,

3    and detracted from other claims in this case.

4         And further, despite Getac's contention that "the Court was within its

5    jurisdiction to hear those counterclaims," the Court explicitly ruled in its

6    Summary Judgement Order that there was no jurisdictional basis for the Court to

7    hear the '994 claims.  (Dkt. 281 [Court's Order Granting Summary Judgment] at

8    p. 8 ("there is no jurisdictional basis for the fifth or eighth counterclaims").

9         Again, this conduct of raising baseless counterclaims on an unasserted

10   patent shows that this is an exceptional case.  *Optis Wireless Tech., LLC v.*

11   *Huawei Device USA, Inc.*, 421 F. Supp. 3d 410, 414-15 (E.D. Tex. 2019) (finding

12   a case exceptional where, among other things, Defendant delayed withdrawing a

13   non-infringement defense until just before trial).

14        E.    **Getac's refusal to identify when it learned of the patents-in-suit**

15              **led to unnecessary motion practice**

16        Getac had no reasonable basis to believe that resisting disclosure of when

17   Getac learned of the patents-in-suit was privileged.  Underlying factual

18   information, such as accused infringers' knowledge of a patent and the first date

19   they became aware of that patent, are not privileged.  *See Intervet, Inc. v. Merial*

20   *Ltd.*, 256 F.R.D. 229, 232 (D.D.C. 2009) (The court "cannot see any reason why

21   the identity of the person or group of people who first came across the '601 patent

22   or the corresponding time frame can be withheld on the basis of privilege."); *see*

23   *also Vasudevan Software, Inc. v. IBM Corp.*, No. C 09-05897 RS (PSG), 2011

24   WL 1599646, at *2 (N.D. Cal. Apr. 27, 2011) (the circumstances surrounding an

25   accused infringer's discovery of a patent "are not in themselves protected by the

26   attorney-client privilege[.]")  As this Court is aware, the date of knowledge was an

27   important ingredient in the jury's finding of willfulness—which is likely why

28   Getac engaged in gamesmanship over this issue by forcing Panasonic and this

12

1    Court into motion practice.  (Dkt. 138 [Panasonic's Motion To Compel

2    Supplemental Response to Interrogatory 5].)

3         Further, Getac asserts "Panasonic presented no evidence to the jury as to

4    when Getac learned of the patents-in-suit."  (Opp. at p. 14.)  This is blatantly

5    incorrect, provides no citation, and once more, is an intentional

6    mischaracterization of the record.  Panasonic presented substantial evidence of

7    when Getac learned of the patents-in-suit.[11]

8    **F.** **Getac's overbroad privilege objections in Mr. Shainman's**

9         **deposition, forcing motion practice and forcing judge**

10        **McCormick to supervise the deposition**

11        ***First***, in its Motion Panasonic did explain why speaking objections are

12   baseless, however, for Getac's clarity, speaking objections are clearly prohibited

13   by Federal Rule Of Civil Procedure 30(c)(2) which clearly provides "[a]n

14   objection must be stated concisely in a nonargumentative and nonsuggestive

15   manner."

16        ***Second***, at no point did Panasonic seek to elicit privileged communications

17   from Mr. Shainman.  Mr. Shainman contended that Getac's attorneys asked him to

18   fabricate information.[12]  As this Court, and Getac, are well aware—a crime-fraud

19   _____

20   [11] (See Dkt. 414-4 at 45:23-46:3 ("Q And when you are designing the product, you look
     to competitors' products, right? A Yes. Q And you also consider other patents in the

21   area, correct? A Yes."); Lao Decl., Exh. E, (Trial Exh. 554 at 1 (Email from Alex Lee
     stating "As discussed today, due to changes in product planning, the original C110

22   convertible laptop project has been suspended and will be replaced by an entry-level
     semi-rugged 2-in-1 detachable laptop. . . The attachment and the Youtube link below are

23   for the Panasonic CF-20 provided for your reference. . .")); Dkt. 414-4 at 14:3-13
     (impeaching the witness with "Q: Did the K120 development team consider any

24   Panasonic patents during the development of the K120 product? A: I would say yes. Q:
     Did you give that testimony on January 7th, 2021, as a corporate representative under

25   oath? A: Yes.")

26   [12] (Lao Decl., Exh. B at 101:15-103:1-11 ("Q: And you told Mr. Hwang that you would

27   never testify
     under oath to the opposite of that, which would be untrue? A: Yes. I told Mr. Hwang

28   that I have been here for a long time. We have been extremely successful. But I'm sorry,

13

1    exception to the attorney-client privilege exists.  *See Micron Tech., Inc. v. Rambus*

2    *Inc.*, 645 F.3d 1311, 1330 (Fed. Cir. 2011).  To the extent that Getac's counsel

3    asked Mr. Shainman to fabricate information, that information would not be

4    privileged under the crime fraud exception.

5        At trial this Court simply decided it would not allow Mr. Shainman's

6    testimony about Getac's counsel.  That decision was driven in part by the reality

7    that Mr. Shainman would identify Getac's trial counsel as the one who told him to

8    lie.[13]

9        Finally, once again Getac mischaracterizes the evidence, and cites to

10   nothing—Judge McCormick did not "rule for Getac."  (Opp. at p. 15.)  Judge

11   McCormick merely granted a protective order which instructed parties to respect

12   Getac's privilege assertions and instructions not to answer questions unless and

13   until overruled by the Court.  (Dkt. 160 [Protective Order].)  Judge McCormick

14   also overruled many, many Getac privilege objections at the deposition of Mr.

15   Shainman.

16   **G.    Getac backed out of its agreement to play witness testimony or to**

17   **produce witnesses identified on both parties' witness lists,**

18   **requiring motion practice**

19       Getac's contention intentionally mischaracterizes the record to place the

20   blame wrongfully on this Court—the facts remain that Getac agreed with

21

22   _____

23   I'm not going to lie in court. I'm not going to perjure myself, and I'm not willing to go to
     jail for this company. Q: And how did Mr. Hwang respond to that? A: Frustrated, not

24   happy that I was pushing back. He told me to do what he says. Be the president. You
     know what you need to do. Q: Did you feel at the end of that meeting that Mr. Hwang

25   was instructing you to perjure yourself in court? A: I believe so, yes. Q: And was that
     something you could not do and you told him that; is that right? A: Yes. Absolutely not.

26   Q: And when you left that meeting, did you believe that you had expressed yourself such
     that Mr. Hwang understood that you would not perjure yourself in connection with this

27   litigation? A: I was crystal clear.").)
     [13] Mr. Shainman specifically identified Getac's trial counsel in his deposition, answering

28   a question after Magistrate Judge McCormick overruled Getac's privilege objection.

14

1  Panasonic about which witnesses would testify in person and which witnesses

2  would testify via deposition designations.  Then, because the deposition testimony

3  was harmful to Getac, it backed out of its agreement.

4      Getac did not "readily agree[]" to the presentation of the deposition

5  testimony.  (Opp. at p. 15.)  Getac forced Panasonic to bring an *ex parte* motion

6  (Dkt. 365 [Ex Parte Application For Order On The Right To Play Deposition

7  Testimony]), and Panasonic actually moved for a mistrial because Getac refused

8  to abide by the agreement it had made.  (Dkt. 414-3 at 14:23-15:5.)  After

9  Panasonic had moved, and after Getac reluctantly admitted there was an

10  agreement, and after Panasonic then moved for a mistrial, Getac folded and agreed

11  because it had no options left.  This Court clearly stated that the fact the parties

12  needed to debate this issue was an "inconvenience to my jury" and a "wasting of

13  my time."  (Dkt. 414-3 at 14:4-6.) Which, because of Getac, it was.

14      Finally, Getac's contention that it agreed to allowing the deposition

15  testimony to its "detriment" because it had no opportunity to review "what

16  Panasonic intended to play" is misleading.  (Opp. at p. 15.)  Counsel for Getac

17  were present at each deposition and had the full and complete opportunity to cross

18  examine Mr. DeWenter, Mr. Collins, Mr. Lu, and Mr. Lin.  Getac was fully and

19  completely aware of all topics and issues presented by the testimony because it

20  was present.

21      **H.  Getac's attempts to confuse the jury**

22      Getac's assertion that "there was nothing improper about that routine trial

23  decision [not] to call Dr. Cairns to the stand" is beyond the pale.  (Opp. at p. 16.)

24  Getac *directly* represented to *this Court* that it would call Dr. Carins to the stand.

25  (Lao Decl., Exh. A at 28:19-23 ("We will also be calling Darren Cairns).)[14]  This

26

27  _____

[14] In fact, Getac's expert Delman relied on statements and analysis made by Dr. Cairns.

28  (Lao Decl., Exh. C at 44:2-5 ("My understanding from reliance on a report by one of our engineering experts, Dr. Cairns, is that . . .").)

1  forced Panasonic to bring a rebuttal expert specifically for functionality, Peter

2  Bressler, during its own case.  If there was "nothing improper about that routine

3  trial decision" then there would have been no need for this Court to tentatively

4  state it was prepared to issue a directed verdict on an issue, express concerns

5  whether Getac acted in **bad faith,** and raise its concern over three times.  (Dkt.

6  414-6at 8:14-17.)  Specifically, this Court stated:

7  
8  > *I'm very concerned when there's a direct*
   > *representation to this Court* that Darran Cairns was
   > going to be called . . . and based upon that, this Court

9  > took a shortcut . . . *I am really concerned about this*
   > *stipulation* . . . and because of this Court's rules in the

10 > past . . . which I am now reexamining . . . Panasonic was

11 > forced to bring a rebuttal expert on functionality, Peter
   > Bressler, during its own case . . . and *I'm very*

12 > *concerned. I don't know if its bad faith . . . but I hope*
   > *Getac is listening very carefully to me: it's one thing to*

13 > *make a representation to other counsel; it's another*

14 > *thing to make a representation to this Court* . . . I
   > would be included to issue a direct verdict in favor of

15 > Panasonic on functionality . . . I won't say it again a

16 > five-day case means absolutely nothing to me. *I'm not*
   > *satisfied to send this to the Circuit on this record.*

17 

18 (Lao Decl., Exh. D Dkt.414-6 at 5:13-15;10:1-2 (emphasis added).)

19 

20 **I.**   <u>**Financial stipulation Getac's refused to stipulate to the**</u>

21    <u>**authenticity of its own financial documents at trial, forcing**</u>

22    <u>**Panasonic to notice deposition during trials**</u>

23    Getac asserts that it did not agree to stipulate to authenticate its own

24 financial records because it did not have time to "review and agree."  (Opp. at p.

25 17.)  It is unclear to Panasonic why Getac would need to re-review its own

26 documents that it had produced.  As noted in its Motion, this forced Panasonic to

27 play largely irrelevant deposition testimony for the purpose of authenticating

28 uncontroversial financial documents, and to seek leave to take a corporate

16

1  deposition for the same purpose during the pendency of the trial.  Again, these

2  tactics were unjustifiable, and reveal attempts by Getac to avoid dealing with the

3  substantive weakness of its case.

4          **J.**    **This Case Is Exceptional**

5       In the end, Getac's litigation tactics outlined above are unreasonable and

6  show a blatant pattern of Getac forcing Panasonic, the Court, and the Jury to

7  address and deal with issues that have little merit.  Such tactics go beyond mere

8  zealous advocacy and cross into an exceptional case for which attorneys' fees and

9  costs should be awarded.  This Court should ignore Getac's instance on knit-

10  picking each issue in an attempt justify its wrongful conduct.

11       Further, Getac's comparison of this case to *Opticurrent* and *Finjan* is

12  misplaced. In *Opticurrent* "the jury found that PI was not willfully blind as to the

13  possibility of infringement," whereas here the jury did find willful infringement.

14  No. 17-CV-03597-EMC, 2019 WL 2389150, at *22 (N.D. Cal. June 5, 2019),

15  aff'd, 815 F. App'x 547 (Fed. Cir. 2020).  Further, the litigation misconduct in

16  *Opticurrent* was the introduction of an expert rebuttal report and "withdrawing

17  claims or defenses" on the eve of trial.  (*Id.* at *23.)  *Opticurrent, LLC* does not

18  contain the type of misconduct that happened here—where Getac represented to a

19  Court that it would call an expert, and then chose not to on the last day of trial

20  after forcing Panasonic to rebut these (unraised) theories; neither does it have

21  similar allegations regarding the unnecessary motion practice and other tactics that

22  Getac used above.  Getac's attempt to warp the holdings of these case to show

23  otherwise is misleading.

24       Further, the circumstances in *Finjan* are drastically different from the case

25  at hand.  *Finjan's* plaintiff raised arguments that its case was exceptional on the

26  grounds that defendants' expert improperly interpreted a claim term and that

27  defendants improperly engaged in discovery hijinks, including the production of

28  ten thousand pages of irrelevant arguments.  *Finjan, Inc. v. Sophos, Inc.*, 244 F.

17

Supp. 3d 1016, 1024-1026 (N.D. Cal. 2017).  But the *Finjan* court held that this case was not extraordinary because the claim term was not relied on by the expert as a substantive basis for his non-infringement opinion (*id*. at 1026-1027) and the irrelevant document represented only a fraction of the total documents produced. *Id*. at 1029.

In contrast, here Getac refused to produce an expert at trial (that it had represented to the Court it would produce) after forcing Panasonic to first raise Getac's own expert's arguments.  It also forced Panasonic to respond to and bring motions to compel over simple discovery matters, and to raise summary judgment motions due to Getac's unexplained and frivolous refusal to drop unnecessary and superfluous issues.  And finally, Panasonic's arguments for exceptionality do not focus on arguments for invalidity defenses.  Rather they focus on Getac asserting a claim which had no reasonable basis in law or fact, and no jurisdiction for this Court to adjudicate, such as the '994 claims.  As such, this Court should not look to *Opticurrent* nor *Finjan* as neither case resembles the facts in this case.

## IV.     THE FEES SUBMITTED TO THIS COURT ARE APPROPRIATE AND REASONABLE

Getac's accusations that Panasonic's billing is not tailored to the particular misconduct alleged has no merit.  (Opp. at p. 19.)  Panasonic submitted affidavits with its Motion regarding the necessity and reasonableness of its fees.  In this connection, all fees incurred were necessary to address Getac's unreasonable positions, arguments, and litigation tactics.  And as explained in Panasonic's Motion and above, Getac unnecessarily drove up legal expenses leading up to and throughout trial.

Moreover, Panasonic achieved an excellent result from the litigation, defeating Getac at every stage, despite Getac's scorched earth tactics.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended

18

1   on the litigation, and indeed in some cases of exceptional success an enhanced

2   award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *see*

3   *also Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (citing *Hensley v.*

4   *Eckerhart* in the context of affirming a District Court's award of attorneys' fees

5   under § 285).  Getac is simply unhappy that it must now reap what it sowed when

6   it insisted on prolonging this litigation.  "An aggressive litigation strategy carries

7   with it certain risks, one of which is that a party pursuing an aggressive strategy

8   may, if it loses, find itself required to bear a portion of the attorneys' fees incurred

9   by the other party in responding to that aggressiveness." *Praseuth v. Rubbermaid*,

10  *Inc.*, 406 F.3d 1245, 1260 (10th Cir. 2005).

11          Further, as discussed more fully in Panasonic's Motion, it is well

12  established that the lodestar calculation—and, thus, the reasonable fee award—is

13  not the same as the amount actually paid by the prevailing party to its attorneys

14  pursuant to any private fee agreement. *See*, *e.g.*, *Quesada v. Thomason*, 850 F.2d

15  537, 543 (9th Cir. 1988) (explaining that "paying a reasonable hourly fee is not a

16  windfall merely because the attorney was willing to work for less" and that courts

17  permit awards "in excess of private agreements" on the basis that "the higher

18  statutory fee should be used to compensate the attorney in full").  Getac's attempts

19  to argue otherwise are futile.

20          In the end, Panasonic does not dispute that "[d]etermining a 'reasonable

21  attorney's fee' is a matter that is committed to the sound discretion of a trial

22  judge." *Scharfenberger v. Sec'y of Health & Hum. Servs.*, 124 Fed. Cl. 225, 234

23  (2015).  Panasonic rests on its arguments submitted in its Motion, and in this

24  reply, in the belief that this Court will exercise its discretion appropriately.

25  **V.      <u>CONCLUSION</u>**

26          The Court should find that Getac's willful infringement of Panasonic's

27  patent rights makes this case "exceptional," and should award Panasonic its

28  reasonable attorneys' fees in the amount of $ $7,280,842.27, including reasonable

19

1   expert witness fees in the amount of $699,331.29, and prejudgment and post

2   judgment interest.

3

4   Dated:  August 29, 2022                    HAYNES AND BOONE, LLP

5

6                                              By: /s/Kenneth G. Parker

7                                                  Kenneth G. Parker
                                                   Jason T. Lao
8                                                  Andrea Levenson

9                                              *Attorneys for Plaintiff Panasonic
                                               Holdings Corporation*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28