8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

- - - - - - -

PANASONIC HOLDINGS CORPORATION,  )
                                 )   **CERTIFIED**
          Plaintiff,             )
                                 )
     vs.                         ) No. 8:19-CV-01118-DOC
                                 )    Day 6, Volume I
GETAC TECHNOLOGY CORPORATION;    )
GETAC, INC.,                     )
                                 )
          Defendants.            )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Jury Trial

Santa Ana, California

Tuesday, June 7, 2022

Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-8141

Certified for U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter

**APPEARANCES OF COUNSEL:**

FOR PLAINTIFF PANASONIC HOLDINGS CORPORATION:

    Kenneth G. Parker
    HAYNES AND BOONE, LLP
    600 Anton Boulevard, Suite 700
    Costa Mesa, California 92626
    949-202-3014
    ken.parker@haynesboone.com

    Jason T. Lao
    HAYNES AND BOONE, LLP
    600 Anton Boulevard, Suite 700
    Costa Mesa, California 92626
    949-202-3051
    jason.lao@haynesboone.com

    Andrea Levenson
    HAYNES AND BOONE, LLP
    600 Anton Boulevard, Suite 700
    Costa Mesa, California 92626
    949-202-3000
    andrea.levenson@haynesboone.com

FOR DEFENDANT GETAC TECHNOLOGY CORPORATION; GETAC, INC.:

    Joseph N. Akrotirianakis
    KING & SPALDING LLP
    633 West Fifth Street, Suite 1600
    Los Angeles, California 90071
    213-443-4355
    jakro@kslaw.com

    Christopher C. Campbell (pro hac vice)
    KING & SPALDING LLP
    1700 Pennsylvania Avenue NW, Suite 200
    Washington, DC 20006
    202-626-5578
    ccampbell@kslaw.com

    Britton F. Davis (pro hac vice)
    KING & SPALDING LLP
    1401 Lawrence Street, Suite 1900
    Denver, Colorado 80202
    720-535-2300
    bfdavis@kslaw.com

Case 8:19-cv-01118-DOC-DFM   Document 475   Filed 10/22/24   Page 3 of 75   Page ID
#:23050
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

3

**APPEARANCES (CONTINUED):**

FOR DEFENDANT GETAC TECHNOLOGY CORPORATION; GETAC, INC.:

    Brian Eutermoser
    KING & SPALDING LLP
    1401 Lawrence Street, Suite 1900
    Denver, Colorado 80202
    720-535-2312
    beutermoser@kslaw.com

    Cori Cudabac Steinmann
    KING & SPALDING LLP
    500 West 2nd, Suite 1800
    Austin, Texas 78701
    512-457-2000
    csteinmann@kslaw.com


SPECIAL MASTER (Present):

    Alan Ball
    ALAN BALL INDUSTRIAL DESIGN (A.B.I.D.)
    50 Francesca Avenue
    Somerville, Massachusetts 02144-2002
    617-718-9342
    aball@abidstudio.com Alan Ball


ALSO PRESENT:

Neil Passey, plaintiff trial presentation technician

T.J. Patel, defense trial presentation technician

Joshua Courtney


INTERPRETER:

    Kaoru Tamura, Japanese language

**I N D E X**

**PROCEEDINGS**                                                    **PAGE**

JURY TRIAL - DAY 6, VOLUME I

Discussion outside the presence of the jury          5

Plaintiff's position by Mr. Parker                   10

Discussion re Juror Number 8                         11

Stipulation read to jury re Exhibits 2358,           14
2360, 2361, 2362 and 2365

Jury Instructions (read)                             15

Discussion outside presence of jury                  72

(Further proceedings reported by Sharon Seffens)

**Certified for U.S. District Court CM/ECF**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

5

**SANTA ANA, CALIFORNIA, TUESDAY, JUNE 7, 2022**

**Jury Trial - Day 6, Volume I**

(7:49 a.m.)

*(Outside the presence of the jury.)*

THE COURT:  First, we're on the record.

**DISCUSSION OUTSIDE THE PRESENCE OF THE JURY**

THE COURT:  You'd reached a stipulation last evening.  And you're welcome to re-renew that stipulation.  But I'm not going to accept your stipulation at the present time.

There's been a back-and-forth between counsel, supposedly on emails, and representations made, that I've chosen not to be involved in.  But I'm very concerned when there's a direct representation to this Court that Professor Darran Cairns was going to be called.

And on behalf of Panasonic, you raised an issue basically of equity, fairness -- I don't wanna say "integrity."  But based upon that representation by Getac, believing that we had, in a sense, co-equal experts, in areas of "functionality" especially, and "obviousness," you called to my attention yesterday the perceived unfairness of this, on behalf of Panasonic.

And it's a far different situation where the two of you get into a discussion by email, *et cetera*, about representations; but that representation was directly made

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 6 of 75    Page ID
#:23053
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

6

by Getac to this Court.  And that representation was that Dr. Cairns would testify.  And based upon that, this Court took a shortcut.

And I hope you will find this refreshing when a Court finds fault with itself.

Based upon that representation, I stated to Panasonic that you would call your expert and present rebuttal, which you did.  And without the countervailing person, Cairns, you were left in a very difficult tactical position that you called to my attention yesterday.

I'm really concerned about this stipulation, because -- you're both guessing what I'm going to do so I'm going to read to you the ruling that I would've made yesterday:

"Getac's witness list names Professor Darran Cairns as an expert."

Also, in remaining last night and reading the daily, that representation was made specifically to this Court when I asked -- the witness list.  And my comment was you could call people out of order.  But it was represented to this Court that Darran Cairns would be testifying:

"Professor Cairns' expert report includes his opinions on the functionality of the patents at issue. Last Thursday evening and last Friday

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 7 of 75    Page ID
#:23054
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

7

morning, Getac represented to Panasonic and to this Court" -- which is more important -- "that it intended to call Professor Cairns as an expert during its case.  Because of this Court's rules on the timing of rebuttal experts" --

-- which I have to admit, in hindsight, I now wish I wouldn't have made.  But I thought we would save time getting experts on the stand.  And if you wanted to excuse Beller [sic], so be it.

But there was an intention and representation to call Professor Cairns as an expert during this case.  And because of this Court's rules in the past -- or at least, if not rules, my prior practice, which now I'm reexamining -- on the timing of rebuttal experts, Panasonic was forced to bring a rebuttal expert on functionality, Peter Bressler, during its own case.  And,

"During Mr. Bressler's direct and cross-examination, the parties elicited evidence relating to functionality.  At the close of Getac's case, Getac decided not to call Professor Cairns at all. And Getac claims that it elicited all of the evidence it needed on functionality from Mr. Bressler.  Getac's decision

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 8 of 75    Page ID
#:23055
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

8

goes against its multiple prior representations to Panasonic" --

07:53 -- but, more importantly, to this Court.

07:53 "Panasonic would not've presented Mr. Bressler as a rebuttal witness, if not for those representations, meaning none of that testimony or evidence would've been admitted."

07:54 And I'm very concerned. I don't know if it's bad faith or not. I'm not prepared to make that record. But I hope Getac's listening very carefully to me: It's one thing to make a representation to other counsel; it's another thing to make a representation to this Court.

07:54 I find the appropriate sanction for Getac's alleged bad faith and representations to exclude rebuttal testimony and evidence about functionality that was elicited from Mr. Bressler. And,

07:54 "Once that is excluded, there's no evidence in front of this jury about functionality."

07:54 I would then be inclined to issue a directed verdict in favor of Panasonic on functionality, which was not part of your stipulation yesterday.

07:54 And that's the course that this Court is inclined to take, unless Getac does one of the following; and that

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 9 of 75    Page ID
#:23056
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

9

is, to call Dr. Cairns, as represented to this Court.

Now, you have three options, and here are your options:

One, this is a tremendous expense to Panasonic. If you bring a motion for mistrial, I'm going to seriously consider that. But you need to thoughtfully have that discussion with your clients.

Two, Getac can make the tactical decision to get Dr. Cairns -- and he's not present. Well, he can get back on the plane, or get out here.

Or, three, you can enter into the same stipulation or stipulations. But having known what the Court's thoughts are, if you enter into the same stipulation last evening, you know, with full knowledge about what I would've done, then I will accept that stipulation between both parties.

I won't say it again: A five-day case means absolutely nothing to me. I'm not satisfied to send this to the Circuit on this record.

I'll reconvene the jury at 8:30. You have a thoughtful discussion. If we're going forward, put the instructions in order. I thought that was done last evening until I got home and saw that they weren't.

And I'll take the bench in about 20 minutes and hear what your thoughts are.

Thank you very much.

And there's no further comment by either counsel. Thank you.

*(Pause in the proceedings at 7:56 a.m.)*

*(Proceedings resumed at 8:40 a.m.)*

THE COURT:  All right.  Counsel, let's call the Getac-Panasonic matter.  You've had enough time.

MR. PARKER:  Do we need to wait on Mr. Campbell?

THE COURT:  Yeah.  I want all counsel present.

MR. AKROTIRIANAKIS:  On the matter of the instructions, Your Honor, they're now --

THE COURT:  I'm not sure we're going forward.  The instructions are irrelevant to me.

I'm going to hear your position first.

All right.  Counsel.

**PLAINTIFF'S POSITION**

MR. PARKER:  Yes, Your Honor.

Panasonic will abide by the stipulation it reached last night with Getac, and proceed.

THE COURT:  All right.  I want that fully your decision now.  Because I agree, after examining the record, and thinking about it last night -- of the untenable position you were put in.  But that now is an independent decision, knowing what my position would be.

Are you satisfied with this stipulation?

MR. PARKER:  Yes.

THE COURT:  Are you satisfied with the stipulation on behalf of Getac?

MR. DAVIS:  Yes, Your Honor.

THE COURT:  All right.  Then are the jury instructions in order?

On behalf of Getac?

MR. CAMPBELL:  On behalf of Getac, they are, Your Honor.

THE COURT:  On behalf of Panasonic, are they?

MR. PARKER:  Yes.

THE COURT:  Could I literally, then, ask the jury to come in?  And can I read these instructions and trust counsel that they're satisfactory, without spending another half hour?

MR. CAMPBELL:  Yes, Your Honor.

MR. PARKER:  Yes.

Okay.  All right.  Then I'll be back with you in just a moment.

*(Pause in the proceedings at 8:52 a.m.)*

*(Proceedings resumed at 9:16 a.m.)*

THE COURT:  We're in session outside the presence of the jury.

**DISCUSSION RE JUROR NUMBER 8**

THE COURT:  I received a note this morning from the clerk that Juror Number 8 called in sick and was not

present.  We then received a phone call from that Juror 15 or 20 minutes ago.  The Court informally played that for counsel.

(Audio phone message played, not reported.)

THE COURT:  Well, first of all, Counsel, after playing that, is there any disagreement that this juror should be excused?

MR. PARKER:  No.

MR. AKROTIRIANAKIS:  No, Your Honor.

THE COURT:  Second, I think it would be responsible on our part to inform the jury that he believes he has COVID, so that they can protect themselves and watch for symptomology in this matter.

Is there any objection?

MR. AKROTIRIANAKIS:  No, Your Honor.

MR. PARKER:  No, Your Honor.

THE COURT:  All right.  And is there any reason the Court shouldn't summon the jury?

MR. AKROTIRIANAKIS:  Your Honor, may I bring to the Court's attention one thing I neglected to do yesterday.

The Court has received, as it will recall, yesterday in total the text message exhibits.  We've agreed on the pages that will actually go back, but that's not reflected in the record.  And we have a very short stipulation.  I think --

THE COURT: All right.

MR. AKROTIRIANAKIS: -- should be read prior to the instructions.

THE COURT: So before I read the instructions, the point is that one of you would like to read the stipulation?

MR. AKROTIRIANAKIS: I think that's appropriate, Your Honor.

THE COURT: Acceptable to Panasonic?

MR. PARKER: Yes, Your Honor.

THE COURT: Getac?

MR. AKROTIRIANAKIS: Yes, Your Honor.

THE COURT: Is there anything else, in addition to that, before I summon the jury?

MR. AKROTIRIANAKIS: No, Your Honor.

THE COURT: All right.

*(To the clerk:) Ask the jury to come in.*

*(In the presence of the jury.)*

THE COURT: All right. If you would be seated. The jurors are present, all counsel. Thank you for your courtesy. And the parties are present.

I want to inform you that Juror Number 8 phoned this morning. He's unable to be with us. He's informed us that he believes he has COVID. We don't know if he's been tested or not, so we're concerned, obviously. And we wanted to inform you of that immediately so you protect yourself.

If you have any symptomology, let us know right away. Okay?

Meanwhile, there's a stipulation between counsel. Then I'm going to read the jury instructions, you'll hear argument, and begin your deliberations.

Counsel, the stipulation.

**STIPULATION**

MR. CAMPBELL: On June 2, 2022, the Court received in evidence Exhibits 2358, 2360, 2361, 2362 and 2365, text messages sent by and to Scott Shainman.

The parties have agreed to include as evidence only certain pages from those text messages. Accordingly, the Court has received the following pages from the following exhibits:

Exhibit 2358 to include pages 2, 22, 23, 38, 39, and 42.

THE COURT: Now, let me stop for just a moment.

(To the jury:) Obviously, you've heard that there were voluminous exhibits on occasion. Counsel have reduced those down to the essential pages that each are stipulating to, so you're not weighing [sic] through a 600-page document.

Counsel, please continue.

MR. AKROTIRIANAKIS: Thank you, Your Honor.

Exhibit 2360 to include pages 94, 95, 100 and 101.

Exhibit 2361 to include pages 367, 444 through 450.

Exhibit 2362 to include pages 594, 595, 655, 681, and 682.

And Exhibit 2365 to include pages 255, 282, 284, and 288.

Your Honor, the other pages of Exhibits 2358, 2360, 2361, 2362 and 2365 are withdrawn.

THE COURT:  Okay.

Stipulated to by Panasonic?

MR. PARKER:  Yes, Your Honor.

THE COURT:  And by Getac?

MR. AKROTIRIANAKIS:  Yes, your Honor.

THE COURT:  All right.  Then, Counsel, can the Court commence reading the instructions to the jury?

MR. AKROTIRIANAKIS:  If you would, Your Honor.

THE COURT:  (To the jury:) I'm going to give you a copy of my instructions after I read them.  But the law requires that I read them to you in one place and at one time, as a collective body.

Please return these to me after you're done with your deliberations.

**JURY INSTRUCTIONS**

THE COURT:  (Reading:)

"Members of the jury, now that you

Case 8:19-cv-01118-DOC-DFM   Document 475   Filed 10/22/24   Page 16 of 75   Page
ID #:23063
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

16

have heard all the evidence, it is my
duty to instruct you on the law that
applies to this case.  You'll have a
copy of my instructions with you when
you go to the jury room to deliberate."
(As read.)

"I've provided each of you with" --

Well, if you need, I can provide each of you with your own copy, but we haven't done so yet.  We have one copy for you.

"You must decide what the facts are.
You must consider all the evidence and
then decide what you think happened.
You must decide the facts based on the
evidence admitted in this trial.  Do not
allow anything that happens outside this
courtroom to affect your decision.  Do
not talk about this case or the people
involved in it with anyone, including
family and persons living in your
household, friends, coworkers, spiritual
leaders, advisors, or therapists.  Do
not do any research on your own or as a
group.  Do not use dictionaries or other
reference materials.

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

17

"These prohibitions on communications and research extend to all forms of electronic communications.  Do not use any electronic devices or media, such as a cellphone or smartphone, PDA, computer, tablet device, the Internet, any Internet service, any text or instant-messaging service, any Internet chat room, blog, or website, including social networking websites or online diaries, to send or receive any information to or from anyone about this case or your experience as a juror until after you've been discharged from your jury duty.

"Do not investigate the case or conduct -- or conduct any experiments. And do not contact anyone to assist you, such as a family accountant, doctor, or lawyer.  Do not visit or view the scene of any event involved in this case."

And,

"If you happen to pass by the scene, do not stop or investigate.  All jurors must see or hear the evidence at the

Certified for U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter

18

same time."  (As read.)

So,

"Do not read, listen to, or watch any news accounts of this trial.

"You must less -- you must not let bias, sympathy, prejudice, or public opinion influence your decision.  I'll now tell you the law that you must follow to reach a verdict.  You must follow the law exactly as I give it to you, even if you disagree with it.

"If the attorneys have said anything different about what the law means, you must follow what I say.  In reaching your verdict, do not guess what I think your verdict should be from something I may've said or done."

And,

"Pay careful attention to all the instructions that I give you.  All the instructions are important because together they state the law that you will use in this case.  You must consider all of the instructions together.  After you've decided what the

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

19

facts are, you may find some instructions do not apply.  In that case, follow the instructions that do apply and use them together with the facts to reach your verdict." (As read.)

"If I repeat any ideas or rules of law during my instructions, that does not mean that these ideas or rules are more important than the others.  In addition, the order in which the instructions are given does not make any difference.

"This is a design patent infringement case brought by Plaintiff, Panasonic Holdings Corporation, commonly referred to as 'Panasonic,' against Defendants Getac Technology Corporation and Getac, Inc., collectively 'Getac.'"

"Panasonic contends that two of Getac's rugged portable computers, the K120 and the UX10, infringe three patent" -- or, I'm sorry -- "three design patents.  The Panasonic patents are U.S. Design Patent Numbers D766,232" --

-- which you've commonly heard referred to as the

'232 Patent.

"D756,998" --

-- which has been shorthanded or commonly referred to as the '998 Patent.

"-- and D785,634" --

-- which you're often heard referred to commonly as the '634 Patent.

"I will refer to these patents collectively as the asserted patents and individually by the last three numbers of the patent:  The D'23 [sic] Patent, the D'998 Patent, and the D'634 Patent.

"Patents issued by the United States Patent and Trademark Office are presumed valid.

"Getac denies that it infringes the asserted claims of the Panasonic Patents.  Getac contends that the asserted patents are indefinite and, therefore, invalid.  Getac also contends that the asserted patents are invalid because they are primarily functional rather than ornamental.  Getac also denies that Panasonic is entitled to recover any damages from Getac.

"This case involves a dispute over a United States design patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a design patent is and how one is obtained.

"Patents are granted by the United States Patent and Trademark Office, some called -- sometimes called the 'Patent Office' or the 'USPTO.' There are two basic types of patents in the United States:  Utility patents and design patents.

"In general terms, a utility patent protects the way an article is used and works.  It also protects a method or process of making or doing something. On the other hand, a design patent protects the way an article looks.  A design patent is directed to the ornamental design for an article of manufacture.  That design does not have to be on an entire product, but rather can be on a portion of a product.

"Ornamental design means the shape of

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

22

the design and/or the surface decoration on the design.  A valid United States design patent gives the patent owner the right for 14 years from the date the patent is granted to prevent others from using, making, offering to sell, or selling the patented design within the United States or from are importing it into the United States without the patent holder's permission.  A violation of the patent owner's rights is called 'infringement.'  The patent owner may try to enforce a design patent against persons believed to be infringers by a lawsuit filed in federal court.

"The process of obtaining a patent is called 'patent prosecution.'  The first step in the process is to file an application with the Patent Office.

"The Patent Office is an agency of the federal government, and employs trained examiners to [sic] review applications for patents.  The application includes what is called a 'specification,' which must contain one or more drawings of the

design, a description of the drawings, and a single claim.  The drawings may be line drawings or photographs.  A design patent's claim generally refers to design patent's drawings and how they are described."  (As read.)

"After the applicant files the application, a Patent Office examiner reviews the patent application to determine whether the claimed design is patentable.  In examining a design patent application, the examiner reviews records available to the USPTO for what is referred to as 'prior art.'  The examiner will also review any prior art submitted to the USPTO by the applicant.

"Prior art is defined by law, and at a later time I'll give you specific instructions as to what constitutes a prior art.  However, in general, prior art includes things that were publicly known or used in a publicly accessible way in this country, or that were patented or described in a publication in any country before the creation of

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

24

the claimed design.

"The examiner considers, among other things, whether the claim defines a design that is new and not obvious in view of the prior art.  A design patent lists the prior art that the examiner considered in deciding to allow the application.  This list is called the 'references cited.'

"After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether the claim is patentable, and thus would be allowed.  If the examiner rejects the claim, the applicant then responds and sometimes changes the claim by amending the existing drawings or submits a new claim.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application including the claim meets the requirements for a

design patent.

"The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the 'prosecution history.'  All of this material becomes available to the public when the design patent issues.

"When the patent is granted by the Patent Office, it gives notice to the public of what the Patent Office and patent applicant regard as the patentable design.

"In addition, with respect to design patents, the Patent Office allows the filing of high-resolution drawings.  The applicant can file them electronically in something called the Supplemental Complex Repository for Examiners, also known as 'SCORE,' database.

"Although a design patent is granted by the Patent Office, the fact that the Patent Office grants a design patent does not always mean that the design claimed in the patent, in fact, deserves

the protection of a design patent.  For example, the Patent Office may not have had available to it all the information that will be presented to you.  In addition, there is the possibility that mistakes were made or that information was overlooked.  Examiners have a lot of work to do and no process is perfect.  Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent.  A person accused of infringement has the right to argue here in federal court that the claim design in the patent is invalid because it does not meet the requirements for design patent.

"It is your job to consider the evidence presented by the parties, and the burdens of proof" -- I will and -- "have described to you, and to [sic] determine independently whether or not Panasonic has proven by a preponderance of the evidence that Getac infringes the design patents at issue and whether or

not Getac has proven by clear and convincing evidence that the design patents at issue are invalid." (As read.)

09:34    "As I did at the start of the case, I'll first give you a summary of each side's contentions in this case.  I'll then provide you with detailed instructions on what each side must prove to win on each of its contentions.

09:34    "Panasonic contends that two of Getac's rugged portable computers, the K120 and UX10, infringe three design patents.  The Panasonic Patents are U.S. Design Patent Numbers D766,232, D756,998, and D785,634.  I'll refer to these patents" -- once again -- "collectively as the 'asserted patents' and individually by the last three numbers of the patent:  The D'232 Patent, the D'998 Patent and the D'634 Patent.

09:34    "Getac denies that it infringes the asserted claim of the Panasonic Patents. Getac contends that the asserted patents

are indefinite and, therefore, invalid. Getac also contends that the asserted patents are invalid because they are primarily functional rather than ornamental.  Getac also denies that Panasonic is entitled to recover any damages from Getac.

"Now, you must decide the following issues:

"First, whether Panasonic has proved by a preponderance of the evidence that Getac infringed the D'232 Patent.

"Second, whether Panasonic has proved by preponderance of the evidence that Getac infringed the D'634 Patent.

"Third, whether Panasonic has proved by a preponderance of evidence that Getac infringed the D'998 Patent.

"Fourth, whether Getac has proved by clear and convincing evidence that the D'232 Patent is invalid.

"Fifth, whether Getac has proved by clear and convincing evidence that the D'634 Patent is invalid."

And,

"Whether Getac has proved by clear and convincing evidence that the D'998 patent is invalid.

"If you decide that any of the asserted patents have been infringed and are valid, then what amount of damages, if any, Panasonic has proved by preponderance of the evidence."

And,

"Eighth" -- and finally -- "whether Panasonic has proved that Getac willfully infringed any of the asserted patents by preponderance of the evidence.

"If you decide any infringement was willful, that decision should not affect any damages award you give.

"To assist you --" in determining -- "in your deliberations, you've been provided a glossary of Patent and Technical Terms in these instructions that identifies terms used in patent matters and gives you the definition of those terms."  (As read.)

The glossary is included and is at tab -- is in a

tab of your notebook.

And, Counsel, you'll find that tab for me.

"I'll also read them to you now, though:

"Application. An application is the initial papers filed by the applicant with United States Patent and Trademark Office also called the 'Patent Office' or 'USPTO.'

"Claim. A claim is the portion of the design patent that defines the design. Each design patent in this case conclude -- includes a single claim that includes a single sentence beginning with the expression, quote, "We claim the ornamental design for" -- blank, dot, dot, dot, end of, quote -- "and refers to drawings of the design patent. The claim defines the scope of the patent holder's exclusive rights during the life of the design patent. In this case, shortly, I will provide a verbal description of what is included in each patent claim.

"Drawings. The drawings are visual

representations of the claimed design contained in a patent application and issued patent, and include several figures illustrating various aspects of the claimed design.  The drawings are part of the specifications.

"Examination.  Examination is the procedure before the U.S. Patent and Trademark Office whereby a patent examiner reviews the filed patent application to determine if the claimed design is patentable.

"File wrapper.  A file wrapper is another term for the prosecution history defined later.

"Filing date.  The filing date is the date of -- a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

"Office Action.  An office action is a communication from the patent examiner regarding the patent application.

"Patent Examiners.  Patent examiners are employed by the PTO to

review/examine patent applications, each in a specific design area, to determine whether the claim of the patent application is patentable and whether the specification adequately describes and enables the claimed design.

"Prior Art.  Prior art is not art as one might generally understand the word 'art.'  Rather, prior art is a technical term relating to patents.  In general, it includes things that existed before the claimed design and might typically be a patent, a printed publication, or product.  I'll give you -- more specific definition of prior art later." (As read.)

"Prosecution History.  The written record of proceedings between the applicant and the PTO, including the original written patent application and later communications between the PTO and applicant.  The prosecution history includes the Office Actions mailed by the PT -- by the Patent Office and the amendments to the patent application and

arguments filed by the applicant during the examination process.

"Specification.  The information that describes and shows the ornamental design referenced in the claim of the design patent.  The specification includes a description of one or more drawings and/or photographs, all of which are incorporated into the claim.

"When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

"When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the

claims or defenses are true.  This is a higher standard of proof than proof by preponderance of the evidence, but it does not require proof beyond a reasonable doubt." (As read.)

"The evidence you are to consider in deciding what the facts are consists of:

"First, the sworn testimony of any witnesses;

"The exhibits that were admitted into evidence;

"Any facts to which the lawyers have both agreed" --

Sometimes referred to as "stipulations."

And,

"Any facts that I may instruct you to accept as proved.

"In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence and you may not consider them in deciding what the facts are.  I'll list them for you:

"First, arguments and statements by lawyers are not evidence.  The lawyers

are not witnesses.  What they may say in their opening statement or in a few moments in their closing arguments are not evidence -- or at other times -- it is not evidence, but it is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differed [sic] from the way the lawyers have stated them, your memory of them controls."

"Second, questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

"Third, testimony that is excluded or stricken or that you have been instructed to disregard is not evidence and you must not -- and must not be considered.

"Fourth, in addition, some evidence may be received only for a limited purpose.  When I instruct you to

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

36

consider certain evidence only for a limited purpose, you must do so; you may not consider that evidence for any other purpose.

"And fifth, anything that you see or hear or may've seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

"Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given either direct or circumstantial evidence.  It's for you to decide how much weight to give to any evidence.

"By way of example, if you wake up in the morning and you see that the

Certified for U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter

sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in light of reason, experience, and common sense."  (As read.)

"There are rules of evidence that control what -- that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received.  Whenever I sustain an objection to the question, you must

ignore the question and must not guess what the answer might've been.

"Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you're deciding the case, you must not consider the stricken evidence for any purpose.

"The physical devices you -- you received are evidence in this trial. You may use them in your deliberations, but not -- but must not alter or modify the devices in any way.

"The defendants are not pursuing an [sic] obviousness combinations as the basis for the invalidity of any of the patents-in-suit.  Mr. Bressler's testimony about obviousness is stricken. The remainder of his testimony remains in the record.

"In deciding the case (verbatim), you may have to decide which testimony to believe and which testimony not to believe.  You may -- may believe everything a witness says or part of it

or none of it.

"In considering the testimony of any witness, you may take into account:

"First, the opportunity and ability of the witness to see or hear or know the thing testified to;

"Second, the witness's memory;

"Third, the witness's manner while testifying;

"Fourth, the witness's interest in the outcome of the case, if any;

"Fifth, the witness's bias or prejudice, if any;

"Sixth, whether other evidence contradicted the witness's testimony;

"Seventh, the reasonableness of the witness's testimony in light of all the evidence; and,

"Eighth, any other factors that bear on believability.

"Sometimes a witness may something -- say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.

People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these difference but not -- but do not decide that testimony is untrue just because it differs from other testimony."

"However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

"The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testified.  What is important is how believable the witnesses were and how much weight you think their testimony deserves.

"The parties have agreed to certain facts that will be read to you.  You

must therefore treat these facts as having been proved."

And, once again, often referred to as "stipulations."

"Witnesses who do not speak English or are more proficient in another language testified" -- or "testify through an official court interpreter.  Although some of you may know a foreign language, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's testimony.  You must disregard any different meanings.

"You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

"A deposition is the sworn testimony of a witness taken before the trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  You should consider deposition testimony presented

to you in court in lieu of live testimony in the same way as if the witnesses had been present to testify.

"Evidence that a witness lied under oath on a prior occasion may be considered, along with all the other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose." (As read.)

"Some witnesses, because of education or experience, are permitted to state opinions and reasons for those opinions."  (As read.)

"Opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

"There are three design patents asserted in this case; namely, the United States Patent Numbers D766,232,

D785,634, D756,998, which claim ornamental designs for a portable computer tablet edge and keyboard docking cradle.  Design patents are often referred to by the letter 'D' followed by their last three digits. The design patents in this case are referred to as D'232, D'634, and D'998 design patents."

09:49    Now, stand up for just a moment.  Let's stretch. Okay?

09:49    Okay.  Counsel, stand up for just a second. That's it.

09:49        "Claim Interpretation.

09:49        "To decide whether Getac infringed any of the three asserted design patents, you must understand what each of them covers.  So I'll describe that to you now.

09:49        "D'232 Patent.  The D'232 design patent covers an ornamental design for a portable computer, as shown and described in Figures 1 through 20 of the D'232 Patent and Figures 1 through 20 located in the '232 [sic] Patent file

history, and available through the Supplemental Complex Repository for Examiners, SCORE, database.  The broken lines shown in the figures represent environment only and form no part of the claimed design.  A 'center switch' is claimed as shown in SCORE Figure 3.  The 'tablet connector' is claimed as shown in SCORE Figure 9.  There is no seam shown and therefore no seam is claimed in SCORE Figure 16.  There is no inconsistency regarding a 'raised button' between SCORE Figures 6/14 and 3/13.

"The D'634 Patent.  The D'634 design patent covers an ornamental design for a portable computer connection terminal with keyboard, as shown and described in Figures 1 through 10 of the patent, and Figures 1 through 10 located in the D'634 Patent file history and available through the Supplemental Complex Repository for Examiners, SCORE, database.  The broken line showing of a portable computer is included for the

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

45

purpose of illustrating environment and forms no part of the claimed design. There is not any material inconsistency in the SCORE figures with the D'634 Patent.

09:51    "The D'998 Patent.  The D'998 design patent covers an ornamental design for a portable computer, as shown as [sic] described in Figures 1 through 9 of the patent and Figures 1 through 9 located in the D'998 Patent file history and available through the Supplemental Complex Repository for Examiners, SCORE, database.  The broken lines in the drawings depict portions of the portable computer in connection with terminal" -- strike that -- "in connection terminal with keyboard that forms no part of the claimed design.  There is not any material inconsistency in the SCORE figures with the D'998 Patent.

09:52    "To determine infringement, you must compare the overall appearances of the accused design and the claimed design, using my claim construction above as to

the meaning of the claimed design. Before conducting your infringement analysis, you must familiar [sic] yourself with each of the prior art designs that've been brought to your attention in this litigation.  In view of this prior art, if you find that, by a preponderance of the evidence, the overall appearance of the accused design is substantially the same as the overall appearance of the claimed design such that an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design, then you must find that the accused design infringes the design patent.  In weighing your decision you should consider any perceived similarities or differences.

"When evaluating designs, be it the claimed design, accused design, and prior art designs, you may find -- you may find the following guidelines and factors helpful to your analysis:

"First, the placement and ornamentation of a logo may alter the overall design. However, the use of a mark or logo to identify the source of an otherwise infringing design will not avoid infringement.

"Second, when the claimed design is visually close to the prior art designs, small differences between the accused design and the claimed design may be important to your analysis as to whether the overall appearance of the accused design is substantially the same as the overall appearance of the claimed design.

"Third, if the accused design includes a particular feature of the claimed design that departs conspicuously from the prior art, you may find the inclusion of that feature important to your analysis as to whether the overall appearance of the accused design is substantially the same as the overall appearance of claimed design.

"Fourth, if the accused design is

visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

"Fifth, you should not consider the size of the accused products if the asserted design patent does not specify the size of the design, but you may consider the proportional size of claimed elements in relation to each other."

And,

"Sixth, the requirements for issuing a patent are not identical to the standard for infringement.  Therefore, the grant of a separate patent on the accused device does not automatically avoid infringement.

"While these guidelines may be helpful to your analysis, please keep in mind that the sole test for infringement is whether you believe that the overall appearance of the accused design is

substantially the same as the overall appearance of the claimed design, such that an ordinary observer familiar with the prior art would be deceived into thinking that the accused design was the same as the patented design.  You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused products.

"Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

"In [sic] determination of whether Getac directly infringed Panasonic's patent is determined by whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design.  An ordinary observer is considered to be

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

50

familiar with prior art designs, and when the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art; if the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer.

"The ordinary observer is an observer or purchaser of portable computers that are designed for rugged use in hostile environments.  The ordinary observer is not the common purchaser of consumer computer electronics, but would instead include purchasing agents, or business decision-makers, fulfilling the specification of the requisitioned ruggedized computers, as well as the users of such ruggedized computers who have input on the purchasing decision.

Case 8:19-cv-01118-DOC-DFM   Document 475   Filed 10/22/24   Page 51 of 75   Page
ID #:23098
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

51

09:57        "Getac contends that the asserted

design patents-in-suit are invalid.

I'll now instruct you as to the rules

you must follow when deciding whether

Getac has proven that patents D'232,

D'634, and D'998 are invalid.

09:58        "All patents granted by the

U.S. Patent and Trademark Office are

presumed valid.  Getac must prove by

clear and convincing evidence that each

design patent is invalid.  An issued

design patent may be found to be invalid

because the patented designs:

09:58          "(a) are dictated by function and

therefore primarily functional;

09:58          "(b) were offered for sale to the

public or in commercial use more than

one year before the patent filing date;

or,

09:58          "(c) indefiniteness.

09:58        "Thus, you must determine whether each

of Panasonic's design patents is

invalid.

09:58        "Getac contends as follows:

09:58        "All of the asserted design patents

are invalid because they are primary -- primarily functional; and" -- next -- "and, second, that all of the design [sic] patents are invalid because they are indefinite.

"I'll now instruct you in more detail why Getac alleges that the asserted claims of the design patents are invalid.

"Before I describe how to assess whether Panasonic's patents are invalid, I'll instruct you about documents and things called "prior art."

"In general, prior art includes things that existed before the claimed designs that were publicly known in this country or used in a publicly accessible way in this country or that were patented or described in a publication in any country.

"Specifically, prior art includes any of the following items received into evidence during the trial:

"If the claimed design was already publicly known or publicly used by

others in the United States before the date of the invention of claimed design. Next,

"If the claimed design was already patented or described in a printed publication anywhere in the world before the date of invention of the claimed design.

Next,

"If the claimed design was already described in another issued U.S. Patent or published U.S. Patent Application that was based on an application filed before the date of invention of the claimed design;

And next,

"If the claimed design was already made by someone else in the United States before the date of the invention. If that other person had not abandoned, suppressed, or concealed his or her convention.

"The date of invention is not disputed in this case. Panasonic's design patents have the following dates:

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 54 of 75   Page ID #:23101
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

54

For Patent Number D785,634, commonly your D'634 patent, the date of invention is July 16, 2015.

The Patent Number D766,232, commonly referred to as D'232 patent, the date of invention is October 20 [sic], 2014.

As to the D756,998 patent, commonly referred to as the D'998 patent, the date of invention is October 20th, 2014.

"Design patents protect the ornamental appearance of an article of manufacture. If Getac proves by clear and convincing evidence that the overall appearance of the patented design is dictated by how it works, the patent is invalid because the design is not ornamental. It should be kept in mind that all design patents must be for articles of manufacture, which by definition are things that have inherent functional characteristics. It is normal and expected, therefore, that claimed designs perform some sort of function that does not disqualify the design for design patent protection. The question is whether those general functional characteristics can only be

embodied by the claimed design, or whether they can be embodied by other designs such that the claimed design is not the only way to perform those general functions.

"When considering whether the designs of Panasonic's products are primarily dictated by function, you should consider:

"First, whether the protected design represents the best design;

"Second, whether alternative designs would adversely affect the utility of the specified article;

"Third, whether there are any concomitant utility patents;

"Fourth, whether the advertising touts particular features of the design as having specific utility; and,

"Fifth, whether there are any elements in the design or an overall appearance clearly not dictated by function.

"When there are several other designs that achieve the function of an article of manufacture, the design of the

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 56 of 75    Page
ID #:23103
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

56

article is more likely to serve a primarily ornamental purpose. Additionally, it should also be kept in mind that the claimed design need not be aesthetically pleasing to be valid. In other words, an absence of artistic merit does not mean that the design is not patentable. Conversely, a functional design can be aesthetically pleasing and still invalid.

"Getac contends that the D'634 Patent is invalid because the design was in public use or for sale more than one year before the filing date of the foreign application that the D'634 patent claims priority to, Japan Application Number 2015-015894. Getac must prove this by clear and convincing evidence. Getac must prove that to an ordinary observer, the claimed design and the design it contends was in public use are identical in all material respects.

"In determining whether a design was in public use, a jury must consider the

totally of the circumstances including the nature of the activities that occurred in public, the public access and knowledge of the public use and whether there was any confidentiality obligation imposed on persons who observed the use.

"The patent laws have requirements for the way in which patent claims are written. The design patent claim which is found in the drawings and any written description thereof, must be sufficiently clear that a designer of ordinary skill in the art reading them is able to determine what the design looks like. If a design patent's drawings do not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

"The amount of detail required for a claim to be in -- to be definite depends on the particular design, the prior art, and the description of the drawings contained in the patent. Design Patent drawings, when read along with the rest

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

58

of the description of the drawings, must reasonably inform a designer of ordinary skill in the art of what the design looks like. Simply because the drawings may not be precise does not automatically mean the claim is indefinite. There is a presumption of validity, and the fact that the examiner issued the patent implies that the examiner did not consider the drawings unclear.

"Panasonic asserts that Getac has willfully infringed Panasonic's design patent. I'll now instruct you as to the rules you must follow in deciding whether Panasonic has proven that Getac willfully infringed the D'232, the D'634 and the D'998 patents.

"To prove willful infringement, plaintiff must first persuade you by preponderance of the evidence that Getac infringed one of plaintiff's valid and enforceable design patents.

"In addition, to prove willfulness, plaintiff must persuade you that it is

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 59 of 75    Page ID #:23106
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

59

more likely than not after learning about plaintiff's patents Getac acted with reckless disregard of plaintiff's patents.  To demonstrate such reckless disregard, plaintiff must persuade you that Defendant Getac actually knew or it was so obvious that Defendant Getac should've known that its actions constituted infringement of a valid and enforceable patent.

"You should consider all the facts surrounding the alleged infringement, including but not limited to the following:

"Whether Getac acted in a manner consistent with the standards of commerce for its industry;

"Whether Getac intentionally copied without a reasonable basis a product of Panasonic covered by the claim of the D'232, D'634, or D'998 patents; and,

"Whether Getac made a good faith effort to avoid infringing the D'232, D'634, or D'998 patents.

"I'll now instruct you on damages.  If

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

60

you find that Getac's product infringes the D'232, D'634, or D'998 design patents, and if [sic] you do not find the D'232, D'634, or D'998 patents -- design patents invalid, then you must determine the amount of damages to be awarded Panasonic for the alleged infringement.

"The damages you award must be adequate to compensate Panasonic for the infringement.  They are not meant to punish an infringer.

"By instructing you on damages, I'm not suggesting which party should win on any issue.  These instructions are provided to guide you on the calculation of damages in the event you find infringement and do not find the D'232, the D'634, or the D'998 design patents invalid, and thus must be addressed in the damages issue." (As read.)

"A plaintiff in a design patent case can elect to prove the defendant's profits as its measure of potential recovery.  In this case, Panasonic seeks

8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

61

to prove Getac's profits as its measure of potential recovery.

"Panasonic must prove each element of its damages by a preponderance of evidence.

"Where the parties dispute a matter concerning damages, it is Panasonic's burden to prove that it is more probable than not that Panasonic's version is correct.  Panasonic must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.

"In this case, Panasonic has elected to seek Getac's profit.  If you find infringement, and do not find the D'232, D'634, or D'998 design patents are invalid, you are to award Panasonic Getac's total profit attributable to the infringement.

"Getac's 'total profit' means the entire profit on the sale of the article of manufacture to which the patented design's applied, and not just the portion of profit attributable to the

62

design or ornamental aspects covered by the patent.  Total patent" -- strike that.

"'Total profit' does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.

"Profit is determined by deducting certain expenses from gross revenue.  Gross revenue is all of Getac's receipts from using the design in the sale of the infringing products.  Panasonic has the burden of proving Getac's gross revenue by a preponderance of the evidence.

"Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods.  Other costs may be included as deductible expenses, if they are directly attributable to the sales of the infringing products resulting in a nexus between the infringing products and the expenses.

"Getac has the burden of proving the deductible expenses and the portion of

the profit attributable to factors other than use of the infringed design by a preponderance of the evidence.

"Determining Getac's total profits on the articles of manufacture involves two steps:

"First, you should identify the article or articles of manufacture to which Getac applied Panasonic's patented designs.

"Second, you should calculate Getac's total profits made from those articles of manufacture.

"It is your job as the jury to determine the article of manufacture to which Getac applied each of Panasonic's patented designs.  Neither, the United States Patent and Trademark Office nor the Court determined the articles of manufacture in this case. An 'article of manufacture' is a thing made by hand or machine, and it may be either a product as a whole or a component of that product.  To identify the articles of manufacture to which

Getac applied each of Panasonic's patented designs, you should consider the following four factors:

"First, the scope of the design claimed in Panasonic's product -- patent, including the drawing and written description;

"Second, the relevant -- relative prominence of the design within the product as a whole;

"Third, whether the design's conceptually distinct from the product as a whole; and,

"Fourth, the physical relationship between the patented design and rest of the product, including whether the design pertains to a component that a user or seller can physically separate from the product as a whole, and whether the design is embodied in a component that is manufactured separately from the rest of the product or if the component can be sold separately.

"In weighing these factors, your objective should be to identify the

article of manufacture for each patent that most fairly can be said to embody Getac's appropriation of Panasonic's patented designs.

"In this case, Panasonic contends that the article of manufacture to which Getac applied Panasonic's patented designs is the entire rugged portable computer.  Getac contends that the article of manufacture for the D'232 and the D'634 Patents are the docking cradle component of the keyboard, and that the article of manufacture for the D'998 Patent is the docking edge component of the tablet.

"Panasonic has the burden to prove that its identification of the articles of manufacture to which Getac applied Panasonic's patented designs is correct by a preponderance of the evidence.

"Damages that you must -- damages that you must award Panasonic commence on the date Getac both infringed and was notified of the design patent or patents Getac infringed.  You may not award

Case 8:19-cv-01118-DOC-DFM   Document 475   Filed 10/22/24   Page 66 of 75   Page
ID #:23113
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

66

Panasonic damages for infringing a patent before Getac had notice of Panasonic's claim of infringement of that patent.

"Before you begin your deliberations today, you'll select one member of the jury as your presiding -- as your presiding juror.  The presiding juror will preside over the deliberations and serve as a spokesperson for the jury here in court.

"You shall diligently strive to reach agreement with all the other jurors, if you can do so, and your verdict must be unanimous.

"Each of you must decide the case for yourself, but you should do so only after you've considered all the evidence, discussed it fully with the other jurors, and listened to their views.

"It is important that you attempt to reach a unanimous verdict but, of course, only if each of can you do so after having made your own conscientious

decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

"During your deliberations you will not have a transcript of the trial testimony."  (As read.)

But let me remind you:  You don't have this official realtime that I'm reading.  (Indicating.)  But you can have testimony read back.  A lot of federal courts don't allow that.  I do.

So if you get to Witness Number 3 for either Panasonic or Getac, and you need something read back that you didn't hear, understand, or you disagree about, we can get that read back to you.  But be patient with us.  I've had three court reporters.  They belong to other judges.  So I'd need to interrupt their proceedings, get that court reporter down; trade my court reporter.  But we'll get you whatever you need.  You'll just continue your deliberations until we get that reading in front of you, if you request.

"If it becomes necessary during your deliberations to communicate with me,

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 68 of 75   Page
ID #:23115
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

68

you may send a note through the clerk or bailiff."

Now, I haven't gotten all that formal.  I greet you every morning and say "hi" to you.  I probably won't from now on except opening up the doors at 7:15 for you every morning.

But now I need to keep a very good record of what you might say to me, or a question you might have.  And I never want that to be informal.  So a formal note will come out from your foreperson saying, "Judge we'd like a transcript read," or whatever request you're making.  And it will be signed by any one or more of you.  So the note can -- will go through the clerk or the bailiff, signed by usually the foreperson.  But any of you can sign the note or request.

"No member of the jury should ever attempt to communicate with me except by a signed writing."

Except I'm certainly gonna say good morning to you.

"And I will not communicate with any member of the jury on anything concerning the case, except in writing, here in open court" -- so I keep a good record.  (As read.)

**Certified for U.S. District Court CM/ECF**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

"If you send out a question, I'll consult with the lawyers before answering it, which may take some time."

They'll be here in the building, but it may take some time to sort out whatever question you may ask, if any.

"You may continue your deliberations while waiting for the answer to any question.  Remember that you're not to tell anyone, including the Court, how the jury stands, whether in terms of vote count or otherwise until after you've reached a unanimous verdict or been discharged."

So when you come into court, let's say you were five-to-two on a particular issue, I never want to know your count.  In other words, when you finally reach a verdict, it would be a unanimous verdict.  But I never wanna know any division or any count until, and if, you reach a verdict.

So,

"A verdict form's been prepared for you.  After you've reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign it, date it, and advise the clerk or

Case 8:19-cv-01118-DOC-DFM    Document 475    Filed 10/22/24    Page 70 of 75   Page
ID #:23117
8:19-CV-01118-DOC - 6/7/2022 - Day 6, Volume I

70

bailiff that you're ready to return to the courtroom."  (As read.)

And we have a special verdict form that we'll explain to you later on.

Now, you absorb all that?

That's why I'm going to give you these instructions.  Okay?

And my thought is this:  Counsel with your permission, I can Xerox a copy of these for each of the jurors, or would you just like one copy to go back?

MR. PARKER:  I'd like a copy back for everybody, Your Honor.

THE COURT:  For every...?

MR. AKROTIRIANAKIS:  Court's pleasure, Your Honor.

THE COURT:  Okay.

I'm gonna make six additional copies, so you have a copy of the jury instructions.  But this isn't a debating society.  You're not to go to one section then... (indicating).  I mean, in other words, they're for your convenience so you each have a copy to look at.  It'll be easier to follow.  So we'll make these during the recess.

Now, you're gonna have long recesses today, and the reason for that is, although I want to get this to you in a speedy fashion, I want you alert.

We're going to take 20 minutes.  And you know the

way we count time, that means 2 hours.  Just joking with you.  But in about 20 minutes, we'll come get you.

And it's a timed argument.  Each side has an hour and 15 minutes.  Panasonic's going to open with an hour, by agreement.  Getac is gonna -- after lunch gonna argue for an hour and 15 minutes.  And then there's rebuttal, 15 minutes, by Panasonic.  So you have an idea.

And my guess is we're probably gonna take a break after Panasonic's argument, uh, in an hour, send you to lunch, bring you back, hear Getac's argument, and then the rebuttal right after lunch.  Okay?

So, Counsel, why don't we say that we'll reconvene in about 20 minutes.  Would that be acceptable?

MR. CAMPBELL:  Yes, Your Honor.

THE COURT:  All right?

MR. PARKER:  Yes, Your Honor.

THE COURT:  All right.

Now, please, once again, don't discuss this matter or form or express any opinion.  We'll come and get you shortly.

Thank you very much for your attention.

*(Jury recesses at 10:19 a.m.)*

*(Outside the presence of the jury.)*

THE COURT:  All right.  Counsel, if you'd have a seat.

**DISCUSSION OUTSIDE PRESENCE OF JURY**

THE COURT:  Just for my record:  Were there any portions of the instructions that I misread?  In other words, I added a few words on occasion.  But if you noticed something that was -- I turned a sentence around or just turned the parties around -- like I did the other night in a briefing to you that I had to correct -- I want to humbly request that you inform me, and that I make those corrections immediately.

On behalf of Panasonic?

MR. LAO:  No, Your Honor.

THE COURT:  On behalf of Getac.

MR. AKROTIRIANAKIS:  No objections, Your Honor.

MR. DAVIS:  Well, just one.

There was a minor misstatement about Getac claiming the patents were "valid" instead of "invalid," when you introduced the issue.

THE COURT:  You'll have to show me where I read because Karlen has the copy of the instructions.  I can certainly re-read that.

Sort that out for a moment informally with the plaintiff.

THE CLERK:  Do you want to number these?

THE COURT:  I'll number them eventually, yeah. I'll do that during the lunchtime.  We've got plenty of

time.

Counsel, step over and make certain that -- if I misread that versus whether I'm applying the law correctly. And if it's simply a misreading and you want me to re-read, I'm happy to.  You may decide that it's appropriate in the instructions, that it's not a misreading, or that it's not a misapplication of the law.

*(Counsel confer.)*

MR. DAVIS:  May we check the record to confirm the statement?

THE COURT:  Certainly.

MR. DAVIS:  Thank you.

*(Counsel review record with court reporter.)*

MR. DAVIS:  Your Honor, it was Getac's mistake. The record correctly reflects the reading of the instruction.

THE COURT:  Does any re-reading -- does any re-instruction need to take place, by the Court?

MR. DAVIS:  No, Your Honor.

THE COURT:  All right.  Then we're in recess, Counsel, for --

MR. PARKER:  Your Honor?  Your Honor?

THE COURT:  Yeah, please.

MR. PARKER:  We'd actually talked about -- I think I can do it in an hour, but we'd actually talked about

90 minutes.  So "115" with 15 rebuttal is what --

THE COURT:  I thought it was an hour and 15.  Did you -- if you changed it between the two of you, that's fine.

MR. PARKER:  Last week we talked about 90 minutes total.

THE COURT:  Oh, I'm sorry.  That's my mistake, then.  Well, you have it.

MR. PARKER:  Okay.

THE COURT:  Okay.  Hour and a half for each side.  Okay.

MR. PARKER:  I'm not trying to hit that --

THE COURT:  No, no, no.  I misstated that.  My apologies.  But they'll never know the difference, Counsel.  They'll be enthused by your respective arguments that the time will just fly by.

Now, go have a nice recess.  Okay?

*(Recess held at 10:23 a.m.)*

*(Further proceedings reported by Sharon Seffens in Volume II.)*

-oOo-

-oOo-


CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held telephone in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  June 7, 2022


                         /s/ Debbie Gale
                    _____
                    DEBBIE GALE, U.S. COURT REPORTER
                    CSR NO. 9472, RPR, CCRR